**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date:  April 17, 2014

Docket No. 32,615

STATE OF NEW MEXICO,

      Plaintiff-Appellant,

v.

REBECCA VIGIL-GIRON,

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Reed S. Sheppard, District Judge**

Joseph E. CampBell, Special Prosecutor
Edgewood, NM

for Appellant

Gorence & Oliveros, P.C.
Robert J. Gorence
Albuquerque, NM

for Appellee

**OPINION**

**SUTIN, Judge.**

**{1}**    On August 19, 2009, Defendant Rebecca Vigil-Giron was indicted on fifty counts of fraud, money laundering, embezzlement, and other offenses relating to her use of election funds during her tenure as Secretary of State.  On November 14, 2012, following two hearings on Defendant's motion to dismiss for a violation of her right to a speedy trial, the district court entered an order of dismissal of the case on speedy trial grounds.  The State appeals from the order of dismissal.  We conclude that the district court properly ruled that Defendant's constitutional right to a speedy trial was violated, and we affirm the order of dismissal.

1

**BACKGROUND**

**{2}** The following factual background is, in large part, adopted from the district court's undisputed findings of fact. Defendant was indicted on August 19, 2009. The case against Defendant was initially joined with those against co-defendants Armando Gutierrez, Joseph Carl Kupfer, and Elizabeth Kupfer (collectively "the co-defendants"). On September 4, 2009, Defendant entered a waiver of arraignment and a plea of not guilty and filed a motion requesting the court to dismiss the case pursuant to Rule 5-204 NMRA "until a fair and impartial prosecutor could be secured." *See id.* (governing the amendment or dismissal of a complaint, indictment, or information). The district court referred to this motion as one to disqualify the attorney general (a characterization that is not a point of contention in this appeal) and for ease of reference and clarity in this Opinion, we do the same. Prior to filing the motion to disqualify the attorney general, Defendant, through her counsel, sent a letter dated August 5, 2009, to Attorney General Gary King stating the reasons that, in her view, the Attorney General's Office had a duty to recuse itself from investigating or prosecuting the case.

**{3}** From August to October 2009, a series of district court judges were excused or recused from presiding over the case. Judge Neil Candelaria was excused by Ms. Kupfer on August 27, 2009; Judge Stan Whitaker was excused by Defendant on September 4, 2009; Judge Charles Brown was excused by the State on September 15, 2009; and Judge Robert Schwartz recused himself from the case on October 16, 2009. On October 19, 2009, Judge Albert Murdoch was assigned to the case. On January 13, 2010, without having heard Defendant's motion to disqualify the attorney general, the court set a jury trial for July 19, 2010. On January 29, 2010, pursuant to Rule 5-604 NMRA (2010, prior to May 12, 2010, amendment), the State filed a petition to extend the time in which to commence trial to September 30, 2010. *See* Rule 5-604(B)(1) (2010) (requiring the commencement of a trial six months after the waiver of arraignment in district court). The State's motion was premised, in part, on the fact that because Defendant waived arraignment on September 4, 2009, the trial date of July 19, 2010, was "beyond the six[-]month rule[.]" Defendant objected to the extension. The court granted the Rule 5-604 petition on February 2, 2010, ordering that the time to commence trial was extended "to and including" September 30, 2010.

**{4}** On May 28, 2010, the State filed a motion requesting the court to clarify the status of the case. Among other things, in its motion to clarify, the State pointed to the fact that no hearing had yet been scheduled on Defendant's motion to disqualify the attorney general. On June 18, 2010, the court held a status conference. Also on June 18, 2010, over Defendant's objection, the court formally vacated the July 19, 2010, trial setting; it later reset the trial to commence on January 3, 2011.

**{5}** On August 13, 2010, Defendant filed a motion for severance of her case from those against the co-defendants, alleging, in part, that the co-defendants could offer exculpatory testimony that would be useful at trial. Included in the motion for severance, Defendant

2

requested that she be tried after Mr. Gutierrez so that he would be prompted "to testify justly without fear of attorney general retribution." Later, however, Defendant withdrew her request to be tried after the co-defendants, requesting instead that she be tried first so that her right to a speedy trial was preserved. Defendant's motion for severance was finally granted on May 18, 2012, approximately twenty-one months later.

{6}     On October 12, 2010, the State filed another motion for clarification of status. In its motion, the State pointed to the fact that there were a number of pending motions, including, among others, Defendant's motion to disqualify the attorney general. The State requested that the court address the outstanding motions at its "earliest opportunity[.]" On November 5, 2010, the court held a status conference. The court vacated the January 3, 2011, date, but did not set a new trial date.

{7}     Defendant filed her first motion to dismiss for a speedy trial violation on January 4, 2011. In support of her claim of prejudice as a result of the delay in bringing the matter to trial, Defendant attached an affidavit in which she stated that, as a result of not having received a speedy trial, she had suffered a loss of employment, an inability to find new employment, various health issues, and "extreme public humiliation." Also attached to the January 4, 2011, speedy trial motion were four letters addressed to Judge Murdoch from Robert Gorence, Defendant's counsel. The first letter, dated November 12, 2010, read, in part:

> This letter is in response to your directive issued during the November 5, 2010[, p]retrial [c]onference that [Defendant], on a weekly basis, assert her request for a speedy trial and inform the [c]ourt of her readiness to proceed on the January 3, 2011[,] trial setting. As I informed the [c]ourt during the last status conference, [Defendant] is ready to proceed to trial, she asserts her right to a speedy trial, and continued delay will cause her further prejudice.

The letter also addressed the prejudice suffered including Defendant's having been "ostracized in the community and [unable to] obtain employment"; having been "castigated in the press"; and suffering health issues caused "by the stress of a scurrilously inaccurate indictment." By the letter, Defendant "demand[ed] her right to a speedy trial[.]"

{8}     A letter dated November 19, 2010, reiterated Defendant's "read[iness] to go to trial" and the continued prejudice suffered as a result of the delay in bringing her case to trial, particularly calling the court's attention to Defendant's suffering "financial hardship" as the result of being unemployable in light of the pending indictment. A letter dated November 24, 2010, indicated Defendant's "readiness to go to trial"; noted her "continued assertion of her right to a speedy trial"; and indicated that "[n]othing ha[d] changed from [the] first two letters." A fourth letter, dated December 3, 2010, reasserted Defendant's readiness to go to trial and her right to a speedy trial, and it further noted that defense counsel had "kept [his] calendar open for the month of January[] 2011, in anticipation of [the] trial[.]" On January 20, 2011, the State responded to Defendant's January 4, 2011, speedy trial motion.

3

**{9}**     On March 14 and continuing through March 17, 2011, the court held an evidentiary hearing on Defendant's motion to disqualify the attorney general. On March 17, 2011, the court entered an order disqualifying the Attorney General's Office from prosecuting the case. On March 30, 2011, the court entered an order giving the attorney general until April 29, 2011, to name a special prosecutor.

**{10}**     On May 11, 2011, Defendant filed her second motion to dismiss based on a violation of her right to a speedy trial, and on May 12, 2011, she filed an amended version of this motion. The motion referred to Defendant's steadfast assertion of her right to a speedy trial, and it referenced the reasons supporting dismissal set forth in the first speedy trial motion. The State responded to this motion on June 6, 2011.

**{11}**     On June 21, 2011, Defendant and the co-defendants filed a joint motion to dismiss based on the State's failure to designate an independent prosecutor by the date ordered by the court. The State responded on June 30, 2011. A hearing was held on the joint motion, and the motion was apparently denied, although the record in this case does not include a copy of the court's order. On July 27, 2011, special prosecutor Joseph CampBell was appointed to prosecute the case.

**{12}**     On July 29, 2011, Judge Murdoch retired. Judge Sam Winder was appointed to replace him in September 2011, and on December 7, 2011, Judge Winder recused from the case. In the meantime, on December 1, 2011, Defendant filed her third motion to dismiss based on a speedy trial violation. This December 1, 2011, motion referenced the lapse of nearly twenty-seven months since Defendant was indicted, the dozens of pending motions, some of which were filed over two years earlier, and stated that Defendant "should not be the recipient of the prejudice she suffers by not being afforded a speedy trial." The State filed its response on December 15, 2011.

**{13}**     Judge Ross Sanchez was assigned to the case on January 9, 2012; he recused the same day. Judge Reed Sheppard was assigned to the case on January 13, 2012, and on March 30, 2012, Judge Sheppard scheduled a status conference to be held on April 11, 2012. In the court's order granting Defendant's motion to dismiss for a speedy trial violation, Judge Sheppard observed that by the time he was assigned to the case, "dozens of motions had been filed by Defendant and [the] co-defendants that had not yet been set or heard, including the three separate speedy trial motions." On May 18, 2012, in a letter to counsel, the court stated that it would decide outstanding motions upon written submissions except for the speedy trial motions, unless either party requested otherwise. In response to the responsive letters from counsel, the court set two days for evidentiary hearings on five of the motions, including Defendant's three speedy trial motions.

**{14}**     At the first hearing, on August 13, 2012, Defendant offered, and within a few days of the court requesting them, provided medical records for the court's in camera review to corroborate her claims of prejudice resulting from the delay. As noted, Defendant's affidavit filed on January 4, 2011, describing the prejudice that Defendant had suffered as a result of

the delay was already before the district court at this time. The State provided no evidence to controvert Defendant's claims, it did not call Defendant as a witness in order to cross-examine her on her affidavit, nor did it call any other witnesses. At a second hearing, held on October 19, 2012, Defendant was the sole witness called to testify. She testified to prejudice suffered as a result of the delay, which we discuss in greater detail later in this Opinion.

**{15}** On November 14, 2012, the court entered an order dismissing the case against Defendant for a violation of her constitutional right to a speedy trial. On appeal, the State requests that we reverse the court's order of dismissal. The State's overarching contention is that the court erred in weighing the speedy trial factors and that those errors resulted in an erroneous dismissal on speedy trial grounds. The State makes a number of sub-arguments in support of its contention, which are discussed in greater detail throughout this Opinion. After considering each of the State's arguments, we conclude that the district court did not err in its speedy trial analysis. Accordingly, we affirm.

## DISCUSSION

### A. Standard of Review

**{16}** Under the Sixth Amendment to the United States Constitution, a person who is accused of a crime has a fundamental right to a speedy trial. *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387. At the heart of this right is "preventing prejudice to the accused." *Id.* ¶ 12. In effect, the right is intended "to prevent oppressive pretrial incarceration[,]" to minimize anxiety accompanying public accusation, and "to limit the possibility that the defense will be impaired." *State v. Spearman*, 2012-NMSC-023, ¶ 34, 283 P.3d 272 (internal quotation marks and citation omitted); *accord Garza*, 2009-NMSC-038, ¶ 12.

**{17}** Determining whether a defendant's speedy trial right has been violated requires a review of the particular circumstances of each case including consideration of the conduct of the prosecution, that of the defendant, and "the harm to the defendant from the delay." *Garza*, 2009-NMSC-038, ¶ 13. Our analysis in this regard is guided by considering four factors: "(1) the length of delay[;] (2) the reasons for the delay[;] (3) the defendant's assertion of [her] right[;] and (4) the actual prejudice to the defendant that, on balance, determines whether a defendant's right to speedy trial has been violated." *Id.* (internal quotation marks and citation omitted).

**{18}** On appeal from an order of dismissal for a violation of a defendant's right to a speedy trial, "we give deference to the district court's factual findings," but we review the speedy trial factors de novo. *Spearman*, 2012-NMSC-023, ¶ 19 (alteration, internal quotation marks, and citation omitted).

### B. The Length of the Delay

5

**{19}** "The length of delay serves two purposes under the speedy trial analysis." *Id.* ¶ 20. On the one hand, it triggers an analysis of the speedy trial factors; and on the other hand it is, itself, a speedy trial factor to be weighed in the balance. *Id.* The speedy trial analysis in the present case was triggered by the passage of thirty-six months from the date that Defendant was indicted to the date of the first evidentiary hearing on her motion to dismiss for a speedy trial violation. The court, having determined that this was a complex case, found that the delay exceeded the speedy trial analysis triggering date of eighteen months by an additional eighteen months. *See Garza*, 2009-NMSC-038, ¶ 2 (stating that the length of delay necessary to trigger the speedy trial inquiry is eighteen months for complex cases). Stated differently, on February 18, 2011, once eighteen months had passed from the date Defendant was indicted, the delay in bringing her to trial became presumptively prejudicial. *See Spearman*, 2012-NMCA-023, ¶ 21 (recognizing that the triggering date preceding a speedy trial analysis is synonymous with a "presumptively prejudicial" delay); *Garza*, 2009-NMSC-038, ¶¶ 21, 23 (same).

**{20}** In terms of the weight given to the length of the delay, "the greater the delay[,] the more heavily it will potentially weigh against the [prosecution]." *Garza*, 2009-NMSC-038, ¶ 24. In the present case, based on the passage of an additional eighteen months beyond the triggering date, the district court found that the length of the delay weighed heavily against the State. The State does not attack the court's finding in this regard, and as such, the finding is conclusive. *See* Rule 12-213(A)(4) NMRA (stating that the appellant's argument "shall set forth a specific attack on any finding, or such finding shall be deemed conclusive").

**C.    The Reasons for the Delay**

**{21}** "Closely related to [the] length of delay is the reason the government assigns to justify the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). A deliberate or bad faith attempt to delay the trial with the goal of hindering the defense will weigh heavily against the prosecution; whereas delay caused by a valid reason, such as a missing witness or time spent opposing the defendant's pretrial motions, is both inevitable and wholly justifiable. *Id.* ¶¶ 25, 27. In the middle of this spectrum is "negligent or administrative delay," which is delay caused, for example, by overcrowded courts, the reassignment of judges, or governmental negligence. *Id.* ¶¶ 26, 29. Negligent or administrative delay is weighed against the prosecution because "the ultimate responsibility for such circumstances . . . rest[s] with the government rather than with the defendant[.]" *Spearman*, 2012-NMSC-023, ¶ 25 (internal quotation marks and citation omitted). "The degree of weight we assign against the [prosecution] for negligent delay is closely related to the length of delay"; the longer the delay, or the greater the threat to the fairness to the defendant, the less tolerant we are of the delay. *Garza*, 2009-NMSC-038, ¶ 26.

**{22}** The district court parsed the delay in this case into four time frames. The first was the two-month delay between Defendant's indictment on August 19, 2009, to the assignment of the case to Judge Murdoch on October 19, 2009. The court weighed that two-month time

6

frame neutrally, "against neither party."

**{23}** The second was the approximately eighteen-month delay between the time that Defendant filed a motion to disqualify the attorney general on September 4, 2009, to July 27, 2011, when the special prosecutor, Joseph CampBell was appointed to the case. The court noted that Defendant's motion to disqualify the attorney general was not heard until eighteen months after it was filed, then, following a four-day hearing, it was "finally granted on March 30, 2011[.]" The court found that "[o]ther than filing the [m]otion . . . Defendant did nothing to cause this delay." The court observed that Rule 5-601(F) NMRA requires all pretrial motions to be disposed of within "a reasonable time after filing[,]" and it found that six months was a "reasonable" time frame for the court to have disposed of Defendant's motion. The court concluded that

> [t]he eighteen months it took for the [c]ourt to hear [Defendant's motion to disqualify the attorney general] was not reasonable. Two jury trials had been scheduled before it was determined who would be prosecuting the case. Once the [motion was heard], the [c]ourt entered its ruling expeditiously, but the State's motion for reconsideration and the delay in appointing a special prosecutor extended the time even further.

Accounting for the two-month overlap of the first and second time-frames from August 19, 2009, to the assignment of the case to Judge Murdoch on October 19, 2009, that weighed neutrally, the court ruled that the remainder of the delay in the second time frame, exceeding sixteen months, weighed against the State. *See Spearman*, 2012-NMSC-023, ¶ 25 (stating that negligent or administrative delay is weighed against the prosecution).

**{24}** The period of five and one-half months from July 29, 2011, when Judge Murdoch retired, to January 13, 2012, when the case was assigned to Judge Sheppard, who ultimately presided over the matter, represented the district court's third time frame. The court ruled that the delay caused by Judge Murdoch's retirement and the subsequent recusals of Judges Winder and Sanchez fell "within the administrative burdens on the criminal justice system and in the speedy trial context, is considered to be negligent delay and weighs against the [S]tate[.]" *See Garza*, 2009-NMSC-038, ¶ 29 (stating that "multiple reassignments of judges in the district court . . . falls within the administrative burdens on the criminal justice system" and is weighed against the prosecution accordingly).

**{25}** Finally, the court noted that its fourth time frame, extending from January 13, 2012, when the case was assigned to Judge Sheppard, to November 14, 2012, the date of its speedy trial dismissal order, was neutral, weighing against neither party, because "the case was proceeding normally during that time frame." *See State v. Valencia*, 2010-NMCA-005, ¶ 18, 147 N.M. 432, 224 P.3d 659 (stating that "where a case moves toward trial with customary promptness, the period of time is to be weighed neutrally" (internal quotation marks and citation omitted)).

**{26}** The State argues that the district court erred in weighing the sixteen-month delay in hearing Defendant's motion to disqualify the attorney general against the State. The State attributes this error to what it views as the court's failure to address three delay-causing factors that should not have weighed against the State. We address each of these in turn.

## 1. The Co-Defendants' Substitution of Counsel

**{27}** The State argues that in weighing the reasons for the delay in the second time frame, the district court overlooked the allegedly delay-causing acts of the co-defendants replacing their counsel. Specifically, the State asserts that Ms. Kupfer changed attorneys on May 10, 2010, thereby necessitating a continuance of the trial scheduled to commence on July 19, 2010; and Mr. Gutierrez changed attorneys on October 1, 2010, thereby necessitating a continuance of the trial scheduled to commence on January 3, 2011. Contrary to the Rules of Appellate Procedure, the State fails to provide record proper citations supporting its assertion that these activities necessitated continuances of the trial; however, even assuming this to be true, it has no persuasive value in the context of the circumstances of this case. *See* Rule 12-213(A)(4) (requiring the brief in chief to contain citations to the record proper with respect to each argument raised therein).

**{28}** As noted in the background section of this Opinion, by the time the July 19, 2010, and January 3, 2011, trial dates were vacated, the district court had yet to rule on a number of motions. Among those unresolved motions was Defendant's September 4, 2009, motion to disqualify the attorney general, which was finally granted on March 30, 2011. In the district court's view, the lack of resolution regarding whether the attorney general would be disqualified from prosecuting the case was the relevant fact in weighing the delay against the State as administrative delay. *See Spearman*, 2012-NMSC-023, ¶ 25 ("Negligent or administrative delay is weighed against the [prosecution], since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant[.]" (internal quotation marks and citation omitted)). As noted earlier in this Opinion, the district court observed that "[t]wo jury trials had been scheduled before it was determined[,] [on July 27, 2011,] who would be prosecuting the case." We interpret the court's order as reflecting its view that, in the absence of a resolution of Defendant's motion to disqualify the attorney general, the July 2010 and January 2011 trial dates were untenable. We agree with the court's assessment. It seems obvious that while the disqualification motion, along with many other motions, was pending, the case against Defendant could not have gone to trial as scheduled. Because the matter of who would be prosecuting the case was not resolved until July 27, 2011, when a special prosecutor was finally appointed, we see no basis on which to conclude that the trial could have commenced earlier.

**{29}** Thus, considering the surrounding circumstances, the substitutions of counsel that the State points to, both of which occurred prior to the appointment of the special prosecutor, were essentially irrelevant in the court's speedy trial analysis. The State does not provide any persuasive argument or authority to demonstrate that the co-defendants' counsel-substituting activities, which occurred within the period of negligent or administrative delay

during which a number of motions were pending, should be weighed neutrally. As such, we are not persuaded that the court erred in excluding the co-defendants' substitutions of counsel from its speedy trial analysis. Further, we observe that Defendant's motion to sever her case from those against the co-defendants was filed on August 13, 2010, and was finally granted on May 18, 2012. Had Defendant's motion to sever been heard and decided earlier, any delay in bringing her to trial that may have been caused by the activities of her co-defendants could have been avoided.

## 2.     The Co-Defendants' Various Motions

**{30}**     The State also makes a general argument, substantially lacking supporting citations to the record, that "the [d]efendants . . . filed no less [than] forty-five . . . substantive motions in this case," including eleven filed by Defendant, and that the delay caused by these motions should have weighed against Defendant. The State does not develop an argument demonstrating how the motions contributed to the delay; instead, the State generally asserts that "[c]learly, . . . filing . . . these motions caused delay in bringing this matter to trial." This argument by the State, insofar as it is undeveloped, unclear, and in large part lacking supporting citations, does not facilitate review, and will not be considered further. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what a part[y's] arguments might be").

## 3.     The State's Argument Regarding Defendant's Contribution to the Delay

**{31}**     The State further argues that the court erred in ruling that, beyond filing a motion to disqualify the attorney general, Defendant did nothing to contribute to the delay. The State identifies what it contends are two contributions to the delay made by Defendant. The first is Defendant's failure to request a hearing on the motion to disqualify the attorney general, and the second is Defendant's having actually filed the motion.

**{32}**     As noted earlier, the district court relied on Rule 5-601(F) for the proposition that the length of time that passed between the filing of the motion to disqualify and a hearing on that motion weighed against the State because it was the result of negligence or overcrowded courts and was "not reasonable." According to the State, however, the court "failed to consider" the fact that, contrary to Local Rule 2-123 NMRA, Defendant did not request a hearing on her motion to disqualify, and, as a result, the court was not notified of the motion until August 2, 2010, when Ms. Kupfer filed a similar motion, in an unrelated criminal case (D-202-CR-2009-03019), and requested a hearing under Local Rule 2-123. *See* LR2-123(A)(2) (stating that "[a]s a condition of filing, all opposed motions . . . shall be presented to the clerk with . . . [a]n original request for hearing . . . along with a copy of the request for the assigned judge").

**{33}**     As an initial matter, the State's citation to a motion filed in an unrelated criminal case and not included in the record on appeal in this case is improper and will not bear on our

analysis. *See In re Aaron L.*, 2000-NMCA-024, ¶ 27, 128 N.M. 641, 996 P.2d 431 ("This Court will not consider and counsel should not refer to matters not of record in their briefs."). Further, the State fails to demonstrate preservation of its argument that Defendant violated Local Rule 2-123 or that the violation resulted in the district court being unaware of the motion. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 ("In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors[] and that a ruling thereon then be invoked." (internal quotation marks and citation omitted)); *see also* Rule 12-213(A)(3), (4) (requiring an appellant to provide citations to the record proper and a statement of preservation in regard to each argument presented). Therefore, we have no obligation to consider this argument. *See State v. Lucero*, 1999-NMCA-102, ¶ 45, 127 N.M. 672, 986 P.2d 468 (declining to address an argument where the appellant failed to comply with Rule 12-213).

**{34}** Moreover, there is no indication from its order that the district court considered the alleged violation of Local Rule 2-123 to be a factor in the delay. As noted, the court premised its ruling on a violation of Rule 5-601(F), determining that six months was a "reasonable" amount of time for the court to have disposed of the motion, but that any length of time beyond that was "not reasonable." The State does not argue that the court erred in its application of Rule 5-601(F), and we see no basis on which to conclude that the court erred in this regard. In sum, we are not persuaded by the State's unpreserved assertion of error premised on Local Rule 2-123.

**{35}** Nor are we persuaded that the court erred in weighing the sixteen additional months that passed before the court decided Defendant's motion to disqualify the attorney general against the State. The State relies on *State v. Wittgenstein*, 1995-NMCA-010, 119 N.M. 565, 893 P.2d 461, for the proposition that delay resulting from a defendant's own motion may not be weighed against the State. Although *Wittgenstein*, having addressed the delay caused by judicial review, does not stand for this proposition, we recognize the validity of the notion that the time required to respond to or hear a defendant's motion generally does not count against the government. *See id.* ¶ 14 (addressing the delay caused by the defendant's having sought collateral review of a matter in federal court); *see also Garza*, 2009-NMSC-038, ¶ 27 (weighing neutrally the time taken to oppose pretrial motions); *State v. Grissom*, 1987-NMCA-123, ¶ 34, 106 N.M. 555, 746 P.2d 661 (recognizing that "[d]elay arising from hearing [the] defendants' motions, not caused by the prosecution" is not weighed against the prosecution in a speedy trial analysis).

**{36}** In this case, however, the district court subtracted the six months that it deemed "reasonable" to hear the motion from the approximately twenty-two months that passed between the time the motion was filed and the time that it was decided. Having thus subtracted six months from the overall filed-to-decided span of time that the motion was before the court, the court concluded that the remaining sixteen-plus months during which the motion should have been but was not decided weighed against the State. The State has not cited any authority to suggest that protracted or unreasonable delay in hearing and

resolving a defense motion should be weighed neutrally. To the contrary, relevant authority supports the conclusion that the court properly weighed the unreasonable delay from the court's untimely ruling upon the motion against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (stating that administrative delay is weighed against the prosecution).

## D. Assertion of the Right

**{37}** The district court found that "Defendant ha[d] vociferously asserted her right to a speedy trial[,]" and, as such, it weighed the assertion factor "heavily in favor of Defendant." *See id.* ¶ 32 (stating that "we accord weight to the 'frequency and force' of the defendant's objections to the delay"). The court found that not only had Defendant filed three separate speedy trial motions at sixteen months, twenty months, and twenty-seven months, respectively, but that Defendant had also objected to extensions of time to take the case to trial. *Cf. Spearman*, 2012-NMSC-023, ¶¶ 9, 32-33 (stating that, although the defendant did not assert his right to a speedy trial in an "impressive or aggressive" manner, it was nevertheless adequate and should be weighed against the prosecution where the defendant asserted his right shortly after the charges were filed, then once again more than fifteen months later, and, in the interim, did not oppose initial delays requested by the prosecution). Having already provided an overview, in the background section of this Opinion, of the history of the case including Defendant's various assertions of her right to a speedy trial, we do not repeat them here. We conclude that the court's finding of Defendant's vociferous assertion of the right is supported by the record.

**{38}** At the August 13, 2012, speedy trial hearing, the prosecutor stated "I agree with [defense counsel], this is one of the best cases I've ever seen where . . . Defendant has asserted [her] right to speedy trial. I cannot argue with that." Moments later, also in regard to the assertion of the right, the prosecutor stated, "[s]o the assertion of the right by [Defendant], I agree, she's asserted that. There's no issue there." Now, on appeal, the State contends not only that Defendant waived her right to a speedy trial, but that the State argued in the August 13, 2012, hearing that she had waived the right and that the court erred by failing to consider the waiver. The record contradicts the State's argument. We will not consider this argument further.

## E. Actual Prejudice to Defendant

**{39}** The district court found that Defendant suffered two distinct forms of prejudice as a result of the delay in this case: (1) undue anxiety and stress, and (2) an impaired defense. Protection from both of these forms of prejudice are at the crux of an accused's right to a speedy trial. *See id.* ¶ 34 (stating that the speedy trial right is intended to "minimize anxiety . . . of the accused" and to "limit the possibility that the defense will be impaired" (internal quotation marks and citation omitted)).

**{40}** The State argues that any adversity or prejudice suffered by Defendant prior to February 18, 2011, the presumptively prejudicial triggering date, cannot be weighed against

11

the State in the speedy trial analysis. The State argues that Defendant was required, but failed, to show that the prejudice she suffered as a result of the pending charges continued beyond February 18, 2011. Additionally, the State argues that the court erred in ruling that Defendant was prejudiced by the death of a witness. Having reviewed the record, we disagree with the State on all accounts.

## 1. Anxiety-Related Prejudice

**{41}** We begin by discussing the State's argument regarding the range of time within which we may consider the prejudice suffered by Defendant. We then turn to actual anxiety-based prejudice followed by prejudice to the defense.

## a. The Triggering Date Issue

**{42}** As an initial matter, we disagree with the State's legal assertion that because February 18, 2011, represented the eighteen-month mark upon which the delay in bringing Defendant to trial became presumptively prejudicial, anything that occurred before that date is not considered in our analysis of the prejudice suffered by Defendant. The State's argument in this regard rests, primarily, on the following excerpt from *Grissom*.

> [The d]efendants also argue they were prejudiced through the destruction of documents in the fire of [a potential witness's] residence in August 1984. The *Barker* analysis does not call for balancing where the length of delay is not presumptively prejudicial. The fire occurred during the period following the filing of the indictment and at a time when there was no presumption of prejudicial delay.

1987-NMCA-123, ¶ 41. Viewed within the context of *Grissom*, it is evident that the State's reliance on *Grissom* is misplaced.

**{43}** In *Grissom*, the defendants were charged by indictment with a number of crimes in November 1983. *Id.* ¶ 4. On October 30, the district court dismissed the charges without prejudice owing to "grand jury irregularities." *Id.* In May 1985, a new complaint containing similar charges to the indictment was filed against the defendants, followed by a criminal information that was filed in March 1986. *Id.* In September 1986, the district court dismissed the criminal information on the basis of a speedy trial violation. *Id.* ¶ 25. The district court held that the relevant time frame for a speedy trial analysis was the thirty-four-month period spanning from the original filing of the indictment through the conclusion, in August 1986, of the speedy trial hearing. *Id.* ¶¶ 24, 27.

**{44}** Contrary to the district court's ruling in *Grissom*, this Court held that the speedy trial factors did not apply to the entire thirty-four-month period because "the time during which an indictment is dismissed should not be considered under a speedy trial analysis where [the] defendants are free of restrictions on their liberty." *Id.* ¶¶ 31-32. Instead, this Court held

12

that the relevant time frame for a speedy trial analysis was the sixteen-month period extending from the date of the criminal complaint to the date of dismissal. *Id.* ¶ 33. And, because the sixteen-month period following the filing of the criminal complaint was presumptively prejudicial, the balancing of the speedy trial factors applied to those sixteen months. *Id.*

**{45}** Against that backdrop, this Court made two conclusions in *Grissom* that are relevant to the State's argument in this appeal. First, as we have already shown to underlay the State's argument, this Court held that loss of evidence that occurred "during the period following the filing of *the indictment* and at a time when there was no presumption of prejudicial delay" would not affect the balance in the speedy trial analysis. *Id.* ¶ 41 (emphasis added). Second, this Court held that the death, twenty-three days after *the complaint* was filed, of a potential defense witness was properly discussed within the speedy trial analysis because the witness's death fell "within the speedy[]trial sequence[.]" *Id.* ¶¶ 43, 59.

**{46}** Thus, contrary to the State's view, *Grissom* does not stand for the proposition that our consideration of the prejudice suffered by Defendant must be limited to the events that occurred after the speedy trial analysis triggering date. Rather, *Grissom* supports the conclusion that once the speedy trial analysis is triggered by the passage of time sufficient to cause presumptive prejudice we may examine the prejudice suffered by Defendant from the filing of the charging document until the district court hears the speedy trial motion. *See id.* ¶ 59 (stating that the death of a witness twenty-three days after the charging document was filed was appropriately considered in a speedy trial analysis).

**{47}** Moreover, a comprehensive view of the speedy trial analysis supports the *Grissom* Court's consideration, in a speedy trial analysis, of prejudicial events that occurred prior to the date of presumptive prejudice. The date of presumptive prejudice is merely a triggering date requiring analysis of the additional factors. *See Spearman*, 2012-NMSC-023, ¶¶ 20-21 (stating that a presumptively prejudicial delay triggers inquiry into the speedy trial factors). Therefore, unless the triggering date is surpassed, we have no occasion to consider prejudice to the defendant, or, for that matter any of the four speedy trial factors because defendants do not have a viable speedy trial violation claim prior to the date of presumptive prejudice. *See State v. Stock*, 2006-NMCA-140, ¶ 12, 140 N.M. 676, 147 P.3d 885 ("When a speedy trial claim is made, the defendant must make a threshold showing that the length of delay is presumptively prejudicial." (internal quotation marks and citation omitted)).

**{48}** The effect of a "triggering date" comports with the notion that pending criminal charges are naturally associated with some degree of stress, anxiety, and adverse social and familial effects, and therefore, until that suffering is protracted beyond the date that it is reasonable to expect a resolution, such suffering will not be weighed in the defendant's favor. *See Spearman*, 2012-NMSC-023, ¶¶ 37-38 (discussing the various forms of prejudice associated with pending criminal charges); *Salandre v. State*, 1991-NMSC-016, ¶ 32, 111 N.M. 422, 806 P.2d 562 ("The operative question is whether the anxiety . . ., once proved,

has continued for an unacceptably long period."). It is unreasonable to assume, however, that the type of suffering that a criminal defendant experiences during the first several months following an indictment is naturally distinguishable from that which she experiences after the triggering date has passed. Common sense dictates a conclusion that, normally, the stress and anxiety, and employment and social problems associated with a pending criminal indictment, can continue and even worsen over time. Thus, to attempt to parse the prejudice that a defendant has suffered by designating it as occurring pre- or post-triggering date would be to attempt to technically measure something that is properly viewed on a continuum. In accord with these considerations, our case law demonstrates that once the date of presumptive prejudice has passed, we may consider indicia of prejudice spanning from the date that the charges were filed through the date of the case's resolution. *See Stock*, 2006-NMCA-140, ¶ 12 (stating that the speedy trial right attaches when the defendant becomes an accused); *see also, e.g.*, *State v. Moreno*, 2010-NMCA-044, ¶¶ 2-4, 37, 148 N.M. 253, 233 P.3d 782 (evaluating the prejudice factor in light of the almost two years that the defendant spent in jail from the time he was arrested to the time his case was resolved); *State v. Rivera*, 2009-NMCA-132, ¶¶ 4, 46, 147 N.M. 406, 223 P.3d 951 (evaluating the prejudice factor associated with the delay between the defendant's arrest in October 2003 to the resolution of his case in April 2006); *State v. Talamante*, 2003-NMCA-135, ¶ 19, 134 N.M. 539, 80 P.3d 476 (considering the prejudice factor in terms of the defendant's circumstances from the time he was arraigned).

**{49}** *Spearman*, upon which the State also relies for the proposition that we may only consider indicia of prejudice that occurred after the date of presumptive prejudice, does not support the proposition. In *Spearman*, the defendant's counsel asserted that, as a result of pending charges, the defendant lost employment, filed for bankruptcy, and was forced to move as a result of his lost employment. 2012-NMSC-023, ¶ 38. The Court observed that the allegations of prejudice, if true, demonstrated that the defendant "suffered some prejudice as a result of the pending charges against him." *Id.* Yet, the Court's review was hampered by the absence of any "actual evidence in the form of affidavits, testimony, or documentation in support of the allegations" of prejudice. *Id.* ¶ 39. Accordingly, the Court remanded the case for an evidentiary hearing to be held in which the defendant would have the opportunity to submit evidence establishing "a causal link" between the delay in bringing him to trial and the prejudice he suffered. *Id.*

**{50}** The State relies on the *Spearman* Court's statement that "[s]uch evidence could have established that the delay in trial beyond the presumptive period caused the alleged prejudice as opposed to the original indictment." *Id.* In our view, however, the State's reliance on the Court's dicta is misplaced. We do not believe that the *Spearman* Court's statement was intended to espouse a principle that prejudice suffered after the indictment but prior to the speedy trial triggering date has no bearing on our analysis. Rather, insofar as the *Spearman* Court was focused on the question whether the allegations of prejudice could be substantiated by evidence, we believe the Court's statement was intended to convey that the defendant must prove with specificity whether and how he was prejudiced by the pending charges. *See id.* ¶¶ 38-39. That is all that can reasonably be read into the Court's dicta in

14

this regard.

**b.      Evidence of Actual Anxiety-Based Prejudice**

**{51}**     In this case, we look at the alleged circumstances of prejudice from indictment to the date of dismissal.  Yet, even were we to limit our discussion to the prejudice suffered by Defendant after the date of presumptive prejudice, we would nevertheless affirm the district court's ruling.  At the October 19, 2012, evidentiary hearing, Defendant testified that, as a result of the indictment, and continuing through October 19, 2012, she suffered hypertension, insomnia, and joint pain stemming from an "acute reaction to stress[.]"  She characterized the stress she was experiencing as "unbelievably extreme[,]" and she stated that her level of stress had "gotten so bad that I have now developed an autoimmune disease as well[.]"  Defendant also testified that she suffered insomnia from the time of the indictment and continuing through the date of the October 19, 2012, hearing.  And she testified further that although her physicians have told her to avoid stress, she was unable to do so while the indictment was pending.

**{52}**     Additionally, in terms of employment, Defendant testified that she lost her job in January 2010, as a result the indictment, and, owing to the pending indictment, had not been able to find new employment since then.  Defendant testified that she had applied for employment at an estimated 156 different businesses and that her efforts in that regard were documented.  She further testified that she had a desire to be a public servant again, but that she could not run for office or become a public servant because she would not pass a background check in light of the pending indictment and the nature of the charges.

**{53}**     The foregoing testimony indicates that Defendant continued to suffer adverse health and employment effects past the February 18, 2011, date of presumptive prejudice through October 19, 2012, when she testified about her then-ongoing adversities as a result of the delay.  The court found Defendant's testimony in regard to her health to be "substantially" supported by her medical records.  Those medical records were viewed in camera by the district court.  The records were not included in the record on appeal.  The State does not attack the district court's reliance on the medical records or the court's findings and conclusions as unsupported by the medical records.

**{54}**     The court concluded that Defendant suffered "ongoing 'extreme' stress[,]" hypertension, insomnia, increased joint pain, and rheumatoid arthritis; and, although she had been told by her doctors to avoid stress, she had been unable to do so with the indictment still pending.  Additionally, the court concluded that Defendant suffered "extreme public humiliation[,]" and, notwithstanding having "put in over 150 applications[,]" she had been unable to find employment since 2010 because of the pending indictment.  In summary, the court concluded that Defendant's affidavit, medical records, and testimony demonstrated that she had "suffered actual prejudice in the form of undue anxiety and stress, which [was] a result of the delay in bringing her case to trial."  Importantly, the State does not attack the court's conclusions regarding Defendant's conditions.  Nor does the State attack the court's

15

finding that "[t]he State offered no evidence to rebut the evidence of actual prejudice introduced by Defendant."

{55}   The State focuses on the fact that, in testifying about the prejudice she suffered, Defendant referenced "the indictment" rather than "the delay" as the cause of her stress. Viewed in context, it is clear that Defendant's references to the indictment as the cause of her medical and employment adversities were references to the lack of resolution of the charges against her. The semantic distinction made by the State does not warrant further consideration. The State also focuses on the fact that Defendant's suffering began or existed well before the date of presumptive prejudice. In the State's view, because these issues "predate the presumptive period of prejudice which began on February 19, 2011[,]" they are attributed to the initial filing of the indictment and not to any delay in prosecuting the case. As we noted earlier in this Opinion, Defendant testified, and the court found, that the medical and employment adversities continued through the date of the October 19, 2012, evidentiary hearing. Indeed, according to Defendant, some of her stress-related maladies worsened over time. Thus, even accounting for the anxiety naturally associated with the filing of criminal charges, we are not persuaded the district court erred in concluding that Defendant's extended period of suffering from stress and anxiety was "undue." *See Valencia*, 2010-NMCA-005, ¶ 29 (recognizing the inherent anxiety associated with pending criminal charges).

{56}   Defendant's anxiety, loss of employment, continued inability to find work, and the public humiliation that she suffered as a result of the pending indictment are forms of prejudice that the speedy trial right is intended to curtail. *See Spearman*, 2012-NMSC-023, ¶¶ 37-38 (recognizing that an un-incarcerated defendant "is still disadvantaged by restraints on [her] liberty and by living under a cloud of anxiety, suspicion, and often hostility" and further recognizing that "[l]oss of employment, especially being unable to work in one's . . . profession, is a consequence of delay that a reviewing court cannot ignore" (internal quotation marks and citation omitted)). Thus, the court appropriately considered these factors in analyzing the prejudice suffered by Defendant, and the court did not err in concluding that Defendant suffered prejudice as a result of the delay.

c.   **Prejudice to the Defense**

{57}   The court also concluded that Defendant's defense was impaired by the delay in that the period of delay encompassed the death, in August 2012, of Hoyt Clifton who was Defendant's former director of elections. The court found that Mr. Clifton was an important witness whom both the State and Defendant intended to call at trial. The court noted that Defendant testified that Mr. Clifton was the head of the selection committee for the contract that was the basis for many of the claims at issue in the case and that Mr. Clifton had been " 'intricate' to the process of piecing together the state plan to use the allocated federal funds" at issue. The court provided a transcribed account of the testimony that it found relevant to the issue of Mr. Clifton's importance to the defense. And it further noted that Defendant testified that Mr. Clifton "was involved in the formation of the contract [at

16

issue,]" and Mr. Clifton "helped in the later administration of the contract." The court concluded that

> [g]iven the [details of the relevant testimony] as to [Mr. Clifton's] importance in the decision-making process at issue in this case, the fact [that] both parties had listed [Mr.] Clifton as a witness, and [Mr.] Clifton's death in 2012, the [c]ourt agrees with Defendant [that] her defense has been impaired by the delay in [bringing] her case to trial.

**{58}** In *Garza*, our Supreme Court stated that the death of a witness during a delay in bringing the case to trial is the "most serious" form of prejudice to the defense and that the prejudice resulting therefrom is "obvious." 2009-NMSC-038, ¶ 36 (internal quotation marks and citation omitted). The *Garza* Court further explained that a defendant asserting this form of prejudice "must state with particularity what exculpatory testimony would have been offered, and the defendant must also present evidence that the delay caused the witness's unavailability." *Id.* (alterations, internal quotation marks, and citation omitted). In support of the foregoing, the *Garza* Court parenthetically noted that other courts had expressed the defendant's burden as a requirement to show " 'that the missing witness[] could have supplied material evidence for the defense' " or that the claimed prejudice " 'must relate to a material fact in issue.' " *Id.* (quoting *United States v. Richards*, 707 F.2d 995, 998 (8th Cir. 1983), and *State v. Davis*, 474 A.2d 776, 780 (Conn. 1984)).

**{59}** Relying on *Garza*'s parenthetical notations of foreign authorities that include the term "material," the State reaches into summary judgment case law for the definition of a material fact, and, applying the summary judgment standard, argues that Defendant failed to "testify to any material facts to which [Mr.] Clifton would be able to testify[.]" The State relies on *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 11, 148 N.M. 713, 242 P.3d 280, for its definition of a material fact. In relevant part, *Romero* states:

> In addition to requiring reasonable inferences, New Mexico law requires that the alleged facts at issue be material to survive summary judgment. To determine which facts are material, the court must look to the substantive law governing the dispute[.] The inquiry's focus should be on whether, under substantive law, the fact is necessary to give rise to a claim.

*Id.* (internal quotation marks and citations omitted). According to the State, because the district court failed to apply this standard by focusing on whether "under substantive law, the fact [was] necessary to give rise to a claim[,]" the court "should not have been allowed to weigh [Mr.] Clifton's death in the [speedy trial] analysis." (Internal quotation marks and citation omitted.)

**{60}** The State provides no authority, nor are we aware of any, that requires or permits the summary judgment standard discussed in *Romero* to be imported as the State attempts here in an analysis of the prejudice suffered by a defendant from the loss of a witness in the

17

context of a speedy trial analysis. We assume no such authority exists. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (noting that the appellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists). Thus, rather than attempt to apply the civil law-based summary judgment standard to a question related to whether Defendant's constitutional right to a speedy trial was violated, we adhere to the language of *Garza*, which requires particularity. *See* 2009-NMSC-038, ¶ 36.

**{61}** To the extent that the State's argument may be construed as a contention that Defendant failed to "state with particularity what exculpatory testimony would have been offered," we are not persuaded. *Id.* (alteration, internal quotation marks, and citation omitted). As a basis for concluding that the defense was impaired by the presumptively prejudicial delay, during which period Mr. Clifton died, the court observed that "[Mr.] Clifton was the head of the selection committee for . . . the contract that [was] the basis for many of the claims at issue in this case."

**{62}** The contract at issue involved the use of federal funds allocated for voter education. Pursuant to a state plan for New Mexico, the voter education was to be accomplished via a media campaign including television and radio advertisements. Defendant testified that she turned over "the duties of voting and voter education" to Mr. Clifton. She testified further that Mr. Clifton, as the head of a three-person committee, "spearheaded" the project and that she did not "do anything, other than be in the office and be the Secretary of State and sign off on what [she] needed to sign off on." According to Defendant, Mr. Clifton recommended selecting Mr. Gutierrez as the contractor to produce the radio and television advertisements, while Defendant herself had nothing to do with the process of selecting the contractor.

**{63}** In the district court's view, Mr. Clifton's importance in the decision-making process at issue in this case and his further involvement in the formation and administration of the at-issue contract was such that his absence from trial constituted an impairment to the defense. The State's attempt through cross-examination of Defendant to negate her testimony generally regarding what Mr. Clifton's responsibilities did not include was insufficient to negate the evidence demonstrating that Mr. Clifton would likely have had knowledge of or involvement in the at-issue activity.

**{64}** In the absence of a direct attack by the State on the district court's findings, including a showing that the findings were not supported by substantial evidence, and including an argument, supported by the record, as to why the court erred in determining that the defense was impaired by Mr. Clifton's absence, the court's determination in this regard is conclusive. *See* Rule 12-213(A)(3), (4) (stating that a contention that a finding is unsupported by substantial evidence requires the appellant to show "the substance of the evidence bearing upon the proposition" and stating the appellant's argument "shall set forth a specific attack on any finding, or such finding shall be deemed conclusive"); *see also Spearman*, 2012-NMSC-023, ¶ 19 (noting that the appellate courts "give deference to the district court's factual findings" (alteration, internal quotation marks, and citation omitted)); *State v. Lowe*,

18

2004-NMCA-054, ¶ 25, 135 N.M. 520, 90 P.3d 539 (rejecting the defendant's argument where she failed to specifically attack the relevant findings of the district court).

## F. Weighing the Factors

**{65}** To summarize, the district court found and the State does not argue differently that the length of the delay that was eighteen months beyond the presumptively prejudicial triggering date weighed heavily against the State. We agree with the court's analysis and conclusion regarding the length of the delay in this case. Thus, we weigh this factor heavily against the State.

**{66}** The district court concluded that the reason for the delay weighed mostly against the State, although not heavily; and we reject the State's argument to the contrary. The delay here was caused in large part by the administrative failures of the district court. Of particular significance was the court's failure for eighteen months to hear or to rule on Defendant's motion to disqualify the attorney general. We also observe that the court failed, until twenty-one months after it was filed, to hear or to rule on Defendant's motion for severance. Further, the court failed to set or hear the "dozens of motions [that] had been filed by Defendant and her co-defendants," including the three separate speedy trial motions that were finally decided by Judge Sheppard. While the nature of this particular case rendered it difficult for the parties and the district court to settle upon a district court judge who was in a position to preside over the matter, we believe that the court, in dealing with the administrative issues that arose, failed to act efficiently and expeditiously in view of the speedy trial-related consequences sure to arise. The State did not go far enough in providing evidence or explanation showing that this case was properly and efficiently managed or showing that the case could not have been managed considerably better for societal purposes and to protect Defendant's right to a speedy trial. *See Spearman*, 2012-NMSC-023, ¶ 47 (Daniels, J., specially concurring) (recognizing the need to "protect the accused's right to a speedy trial without sacrificing society's interest in enforcement of its criminal laws"). Under the circumstances of this case, we agree with the district court's determination that the reason for the delay weighed against the State. Thus, we weigh this factor moderately against the State.

**{67}** The district court weighed the assertion of the right heavily in Defendant's favor. Although the State argues that the court erred in this regard, the record supports the court's determination, and we are not persuaded that the court erred.

**{68}** Finally, as to the prejudice factor, the district court concluded based on findings supported in the evidence and not attacked by the State that Defendant established that she suffered actual prejudice as a result of the delay. Defendant's showing of prejudice was supported by her affidavit and testimony, and her medical records that the court found supported her claims relating to her anxiety, stress, and various other conditions, and the prejudice resulting from excessive delay. As such, this factor was appropriately weighed against the State.

**{69}** In sum, the district court weighed the assertion of the right factor in favor of Defendant and weighed all three other factors against the State. We conclude that the district court did not err in weighing the speedy trial factors in this case and in ruling that Defendant's speedy trial right was violated.

**CONCLUSION**

**{70}** We affirm the district court's order dismissing the case against Defendant for a violation of her right to a speedy trial.

**{71}    IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**