This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37119

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**ENRIQUE MORENO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**Cindy M. Mercer, District Judge**

Hector H. Balderas, Attorney General
Eran Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Defendant appeals from his convictions for criminal sexual penetration of a minor under thirteen, contrary to NMSA 1978, § 30-9-11(D)(1) (2009), attempted criminal sexual penetration of a minor under thirteen, contrary to NMSA 1978, § 30-28-1 (1963), and § 30-9-11(D), and criminal sexual contact of a minor under thirteen, contrary to NMSA 1978, § 30-9-13(B)(1) (2003), arguing the district court abused its discretion by failing to excuse a juror who informed the court on the final day of trial that he had learned his family knew the victim's family. Because Defendant stated in his reply brief

that his argument is limited to the issue of actual bias, our opinion is limited accordingly. Having reviewed the record and considered the parties' arguments on appeal, we affirm.

## DISCUSSION

**{2}** We review the district court's denial of a request to remove a juror for an abuse of discretion. *State v. Johnson*, 2010-NMSC-016, ¶ 31, 148 N.M. 50, 229 P.3d 523; *State v. Clark*, 1999-NMSC-035, ¶ 8, 128 N.M. 119, 990 P.2d 793 (stating that, "absent manifest abuse of discretion, we will not disturb a trial court's determination of questions of juror bias" (alteration, internal quotation marks, and citation omitted)). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**{3}** An allegation of juror bias is an allegation that a juror is unable to function impartially, and the inquiry focuses "on the presence or absence of evidence demonstrating that they were unwilling or unable to decide the case based on the evidence adduced at trial and the instructions given by the trial court[.]" *State v. Rackley*, 2000-NMCA-027, ¶ 11, 128 N.M. 761, 998 P.2d 1212. "The burden of establishing partiality is upon the party making such a claim." *State v. Baca*, 1983-NMSC-049, ¶ 9, 99 N.M. 754, 664 P.2d 360. When a defendant alleges he was denied a fair and impartial jury, we consider the record to determine whether it supports the allegation. *Cf. State v. Pedroncelli*, 1984-NMSC-009, ¶ 26, 100 N.M. 678, 675 P.2d 127 (stating that the defendant's claim that certain veniremen should have been excused for cause failed in part because the defendant must allege, and the record must show, that the defendant was denied a fair and impartial jury).

**{4}** In the present case, two jurors were dismissed during the course of Defendant's trial, leaving no remaining alternates. On the final day of trial, the district court notified the parties that a third juror had indicated to the bailiff that his niece is familiar with the victim's family. The court stated, "He had no knowledge of the [victim's] family. He has never met them. He has no contact with them, and there is nothing about that knowledge that would impact his decision. But he did come forward and said that his niece may know the family. So I just wanted counsel to be aware of that." Based on this disclosure, the district court and counsel for both parties examined the juror in camera. When asked how the matter had come up, the juror stated that after he returned home the previous night, his sister, with whom he lived, asked if he was on the case "about [the victim]." The juror explained that he responded initially, "How did you know that?"—because he hadn't talked about it to anyone—before telling her that he was on the case, but the juror stated he had not told his sister anything more about the case. The juror explained that his sister informed him that she had made the victim's prom dress, that his niece and grand-niece both knew the victim, and that his niece's father gave the

victim's family a refrigerator. When asked by the district court whether his niece or grand-niece, or both, knew the victim's family, the juror responded, "[a]ll of them."

**{5}** During the in camera examination, the district court asked the juror, "in what way did [the conversation] impact you with regard to you sitting on the case?" The juror responded that he felt it important to immediately inform the district court of the relationship to ensure that he was not "the cause of a mistrial or anything." The district court clarified its question: "Do you believe that that conversation impacted you as far as your ability to sit on this case?" The juror responded, "No, I can be very bipartisan." Neither the district court, nor counsel for either party pressed this issue further. After questioning was complete, defense counsel requested the juror be removed, arguing that she thought that if this information had come up at voir dire, she would have challenged the juror for cause or chosen to strike him. The district court declined to remove the juror and ruled that, although the juror had received information from others, nothing indicated that he discussed the details of the case or that he could no longer remain fair and impartial.

**{6}** Defendant contends that the multiple connections between the families created two possible sources of bias for the juror: (1) that the juror would unfairly weigh the victim's credibility, which was vital to the State's case; and (2) his own potential discomfort in voting for acquittal because then "his family . . . would have known that he did not believe [the victim]." Although Defendant adamantly argues that the juror *could have been* or *may have been* or *was possibly* biased, Defendant has not provided any evidence demonstrating *actual* bias in this case. *State v. Hanson*, 2015-NMCA-057, ¶ 15, 348 P.3d 1070 ("[T]he mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). The district court and counsel for both parties freely questioned the juror, and the questioning revealed only that the juror, through no act or misconduct of his own, inadvertently learned that other members of his family knew the victim. Under similar circumstances where a juror's sister worked as a victim's advocate and sat with the victims' family throughout the trial, our Supreme Court held that "[t]he juror's connection to the attorneys prosecuting the case was indirect and insufficient as a matter of law to support a determination of *implied* bias[.]" *State v. Sanchez*, 1995-NMSC-053, ¶ 15, 120 N.M. 247, 901 P.2d 178 (emphasis added). Consequently, we cannot say that the relationship between the juror's family and the victim in this case, without more, is sufficient to establish *actual* bias. "Given the speculative nature of the alleged bias, the trial court's finding was not against the logic and effect of the facts and circumstances before the court, and the trial court did not abuse its discretion." *State v. Gardner*, 2003-NMCA-107, ¶ 12, 134 N.M. 294, 76 P.3d 47 (internal quotation marks and citation omitted).

**{7}** Defendant nevertheless argues that the juror's ability to serve impartially was never clearly established on this record. He contends that the meaning of the juror's assertion that he could "be very bipartisan" is so unclear in the context of a criminal trial that it cannot be interpreted to establish a record of impartiality. We are unpersuaded. The juror conveyed a clear desire to be forthright with the district court and ensure that he was not the cause of a mistrial. Moreover, the district court's determination that the

juror indicated he could be fair and impartial is not unreasonable when taken in the context of the conversation between the juror, the district court, and the parties' counsel, and when considering that the juror was answering a question posed by the district court as to whether the information impacted his ability to sit on the case. Aside from arguments of potential or speculative bias based on the juror's family's familiarity with the victim and her family, Defendant has failed to establish any bias. *See State v. Pierce*, 1990-NMSC-027, ¶ 11, 109 N.M. 596, 788 P.2d 352 (reiterating that it is the burden of the party claiming partiality to establish juror bias). Based on the entire conversation and the context in which the juror's statement that he could be "very bipartisan"—which we take to mean could give both sides fair consideration—arose, we conclude that the district court did not abuse its discretion in ruling that the juror "indicated he could be fair and impartial" and declining to excuse the juror. *See Clark*, 1999-NMSC-035, ¶ 8.

**{8}**     Defendant also fails to persuade us that he could not establish a clear record of bias during his questioning of the juror mid-trial and fails to present any authority that the district court and counsel for both parties' questioning of the juror in camera regarding the potential bias was insufficient. *See Pedroncelli*, 1984-NMSC-009, ¶ 26 ("If there is a genuine concern about the partiality of a prospective juror, [the] defendant must take adequate steps to establish such bias in the record."). Defendant argues that questioning the juror mid-trial was more challenging because counsel "was questioning a sitting juror who had yet to pass judgment on [Defendant]" and counsel "needed to be wary of alienating or offending him by suggesting that he was biased, or of exacerbating existing bias by putting ideas in his head." To the extent Defendant suggests that his attorney was constrained in asking difficult questions to probe for bias in light of those considerations, he fails to acknowledge that the district court mitigated that risk by assuming the onus of questioning the juror directly with specific questions submitted by counsel beforehand. The court thoroughly questioned the juror and allowed the attorneys to ask follow up questions afterward. Defendant has not argued that the district court's procedure of relaying his attorney's questions through the judge was inappropriate or inadequate to buffer any concerns of alienating or offending the juror. Given this, we reject Defendant's arguments regarding his attorney's inability to make an adequate record of bias here.[1]

**{9}**     Defendant additionally relies on *Alvarez v. State*, 1978-NMSC-042, 92 N.M. 44, 582 P.2d 816, to argue that there is a "heightened importance of bias when it relates to the credibility of a key witness's uncorroborated testimony." *Alvarez*, however, is inapposite. In that case, several of the jurors had previously served on another case in which the same defendants had been convicted of similar but disconnected criminal acts, primarily on the testimony of the same witnesses. *Id.* ¶ 6. Our Supreme Court

---

[1]Defendant also argues that a heightened standard for bias is warranted because of when the facts giving rise to the alleged bias were discovered, but he cites no authority to support this contention, and we therefore assume none exists. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists."); *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

determined that when jurors have already rendered a verdict on the credibility of certain witnesses in a prior case, the jurors cannot overcome the implied bias in a new case solely by their own avowals of impartiality because their prior decision on the witnesses' credibility is presumed to influence their actions in the new case. *Id.* ¶¶ 8-9. Our Supreme Court thus held "[i]n these circumstances, these jurors cannot be judges of their own impartiality." *Id.* ¶ 8. Even so, the Court indicated that these circumstances would not bar jurors from serving if "the prosecution can satisfy the court that the testimony of the material witness will be corroborated by the testimony of other witnesses." *Id.* ¶ 13. Nothing in the present case indicates that the juror's indirect connection to the victim functioned as a predetermination of the victim's credibility in any similar way.

**{10}** For these reasons, we conclude the district court did not abuse its discretion in declining to remove the juror and therefore affirm.

**{11}  IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**