IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2012-NMSC-023

Filing Date: July 19, 2012

Docket No. 32,800

STATE OF NEW MEXICO,

       Plaintiff-Respondent,

v.

MARC ALAN SPEARMAN,

       Defendant-Petitioner.

ORIGINAL PROCEEDING ON CERTIORARI
John A. Dean, Jr., District Judge

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Ralph E. Trujillo, Assistant Attorney General
Santa Fe, NM

for Respondent

Law Office of Scott M. Davidson
Scott M. Davidson
Albuquerque, NM

Practicing Law Students of the
University of New Mexico School of Law
Kevin Nault
Candra Rivers
Andrea Salazar

for Petitioner

Law Office of Jamison Barkley LLC
Jamison Barkley
Santa Fe, NM

1

For Amicus New Mexico Criminal Defense Lawyers Association

**OPINION**

**BOSSON, Justice.**

**{1}**    Speedy trial analysis under the United States Constitution requires a balancing and weighing of several factors, including the length of delay, the cause of the delay, timely assertion of the right, and prejudice to the accused.  When, as here, one of those factors—in this case the cause of the delay—weighs heavily against the State based on its own dilatory and deceptive conduct in prosecuting the case, the district court justly may dismiss the charges even though the remaining factors favor the accused only slightly.  The district court did so in this instance, but was reversed by the Court of Appeals due to the lack of perceived prejudice to the accused.  For the reasons that follow, we reverse the Court of Appeals and remand to the district court for a new speedy trial hearing.

**BACKGROUND**

**{2}**    Marc Alan Spearman (Defendant) was charged by information with one count each of  practicing architecture without a license, fraud, and forgery on December 3, 2008.  The charges stemmed from allegations that Defendant, a licensed architectural draftsman with his own business, provided architectural services that he was not licensed to provide.  The first count involved a dispute with a former client over whether Defendant had misrepresented himself as an architect. The second and third counts involved an allegation that he either had forged an architect's seal or altered a sealed design.   Defendant has continuously maintained that he had never misrepresented himself as an architect and that the changes he made to the plans at issue were approved by a licensed architect,  Charles Pearson.  Defendant claims that Mr. Pearson disavowed his approval of the plans to "avoid professional discipline," after those plans were rejected by the San Juan County Building Department.

**{3}**    Defendant was arrested but released on bond after spending one day in jail.  On December 22, 2008, Defendant's attorney filed an entry of appearance and made a demand for a speedy trial.  The case was then refiled in district court and a trial date was first set for August 4, 2009.

**{4}**    On June 30, 2009, the State filed its first motion to continue.  As grounds for the continuance, the State claimed that a witness "will be out of town and unable to attend the trial."  The court granted the motion and a new trial date was set for October 6, 2009.

**{5}**    In the interim, Defendant filed a motion to exclude witnesses and evidence. A hearing was set for that motion on July 15, 2009.  Two days before the hearing the State filed a motion to continue, stating that counsel would be out of the country.  According to that motion, "[defense] counsel could not be reached by telephone on July 08, 2009."

2

The hearing on the motion was rescheduled for September 15, 2009. The record does not contain any indication that a hearing was held on that day or that a hearing scheduled for that day was continued, and it is unclear why.

**{6}** On September 29, 2009, seven days before the second trial date, the State again filed a motion to continue, claiming to need more time to respond to another of Defendant's motions. The district court rescheduled the trial, now the third trial setting, for January 7, 2010.

**{7}** On December 18, 2009, the State filed its third motion to continue the trial, overall its fourth motion for a continuance in this case, on the ground that the "State's key material witness . . . will be out of state . . . until January 14, 2010." The motion also stated that "[o]pposing counsel takes no position." For the third time, the district court granted the motion to continue, and rescheduled the trial for February 9, 2010, the fourth trial date thus far.

**{8}** On February 3, 2010, six days before the fourth trial setting, the State once again filed a motion to continue. This time the State claimed that the case was being reassigned to a new prosecutor who needed more time to prepare for trial. The motion was granted the next day, February 4, 2010. Although the motion stated that opposing counsel was unavailable, Defendant filed a response formally opposing the motion on that same day, claiming that "[i]f the State's motion were granted, this would make the sixth hearing to be vacated as a result of the State. Five were continued at the State's direct request, and one was a result of [State's counsel] not providing discovery." Ultimately a new trial date was set for April 20, 2010.

**{9}** On March 16, 2010, Defendant filed a motion to dismiss for violation of his constitutional right to a speedy trial. At this point, more than 15 months had passed since Defendant's indictment, and the trial was still another month away. In addition to the various delays previously discussed, the motion noted that the State had delayed discovery, which defense counsel finally received "the first week of July, three weeks after the first trial setting." Defendant also stated that, along with his written opposition to the motion to continue the February 9, 2010 trial setting, Defendant had also opposed "the second extension of time (filed January 11, 2010)," although "the petition indicates 'opposing counsel takes no position.'"

**{10}** The motion further alleged how these delays had prejudiced Defendant. Due to the nature of the pending charges, Defendant had been unable to work in his profession as a draftsman, and had "lost three different jobs as a result of the pending felony charges." Moreover, Defendant was compelled to file for bankruptcy and had to move as a result of his unemployment. The State never attempted to rebut these allegations of prejudice, and the district court scheduled a hearing on the motion to dismiss for April 14, 2010.

3

**{11}** The State filed a written response to the motion two days before the hearing. The State argued that this was a complex case, and therefore, under *State v. Garza*, 2009-NMSC-038, ¶¶ 2, 48, 146 N.M. 499, 212 P.3d 387, the delay had not yet exceeded the eighteen-month threshold for a complex case, requiring the district court to reject the motion. In the alternative, the State argued that if the district court found the case was of intermediate complexity, the balancing test under *Barker v. Wingo*, 407 U.S. 514, 530 (1972), also required rejection of the motion.

**{12}** The district court conducted a hearing which began with the judge asking defense counsel about the alleged prejudice to her client. Defense counsel responded by repeating the allegations in the written motion to dismiss, pertaining to lost job opportunities and bankruptcy. The court then inquired specifically about alleged prejudice to the ability to prepare a defense. In response, counsel conceded that Defendant had not suffered any actual prejudice to his defense.

**{13}** After the short discussion about prejudice, the judge steered the hearing toward a discussion of whether the case should be classified as simple, intermediate, or complex. Defense counsel characterized the charges as simple, but the amount of documents provided during discovery might make it of intermediate complexity. The court opined that "it appears to me that . . . this is not a very complicated case," and then later stated "I think this is a simple case." The court laid out what the State needed to prove to win its case—"Is he an architect? No. Did he represent himself as an architect? Yes. What was the damage? That doesn't sound complicated."

**{14}** Ultimately, the court found a speedy trial violation and dismissed all of the charges against Defendant. While the district court did not find any prejudice to Defendant, it weighed the length of delay and the assertion of the right heavily against the State. The court weighed the reason for the delay "extremely heavily" against the State. In its order dismissing the charges, the district court stated:

> The basis for the State's first Motion to Continue the trial was that a witness would be unavailable. This led the Court to believe that the State was otherwise prepared to proceed to trial. However after that continuance was granted, the State amended its witness list and its exhibit list, and provided Defense Counsel and the Court with multitudinous documents by way of discovery. The Court has since struck those documents from the record. The Court now finds that the State was not prepared to proceed to trial at the time the first continuance was filed. This Court also notes that the second Petition for Extension of Time was based on the allegation that the Court would not be able to set the trial prior to the expiration of the Six-Month Rule. However, this Court had set this matter for trial four previous times within the Rule and the first extension.

4

The district court ultimately found "that the State was dilatory in its pursuit of this matter," and dismissal was the appropriate remedy.

**{15}**     The Court of Appeals reversed in a memorandum opinion. *State v. Spearman*, No. 30,493, slip op. at 8 (N.M. Ct. App. Dec. 10, 2010). The Court of Appeals agreed with the district court that Defendant was not prejudiced and that the other three factors weighed against the State. *Id*, slip op. at 4, 5-6, 7. However, the Court of Appeals did not agree that the three other factors weighed heavily against the State, as they must under *Garza*, 2009-NMSC-038, ¶ 39, to warrant dismissal of the charges. *Spearman*, No. 30,493, slip op. at 3. Accordingly, the Court of Appeals reversed the district court and ordered the charges reinstated.

**DISCUSSION**

**{16}**     The right of the accused to a speedy trial is guaranteed by both the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution.[1] The right "escapes precise definition" and has been described as "amorphous, slippery, and necessarily relative." *Garza*, 2009-NMSC-038, ¶ 11 (internal quotation marks and citation omitted). Therefore, any determination of whether the right has been violated depends on "an analysis of the peculiar facts and circumstances of each case." *Id.*

**{17}**     The United States Supreme Court gave four factors to consider in *Barker*, 407 U.S. at 530: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. Each of these factors is weighed either in favor of or against the State or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated. *See Garza*, 2009-NMSC-038, ¶ 13.

**{18}**     The *Barker* Court concluded that the factors "have no talismanic qualities," and none of them are "a necessary or sufficient condition to the finding of a [violation] of the right of speedy trial." *Barker*, 407 U.S. at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

**{19}**     Ruling on a motion to dismiss due to a speedy trial violation requires the district court to "make certain factual determinations and legal conclusions." *State v. Maddox*, 2008-NMSC-062, ¶ 8, 145 N.M. 242, 195 P.3d 1254, *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48. Thus, "we give deference to the [district] court's factual findings," but we review "the weighing and the balancing [of] the *Barker* factors

---

[1]Defendant does not assert that New Mexico's speedy trial guarantee should be interpreted differently from the Sixth Amendment, nor have we done so in the past. *See Garza*, 2009-NMSC-038, ¶ 10, n.1. Therefore, we will treat both protections as the same for the purposes of this opinion.

5

de novo." *Id.*

**The Length of Delay**

**{20}** The length of delay serves two purposes under the speedy trial analysis. First, the length of delay acts as a "triggering mechanism requiring further inquiry into the *Barker* factors" once the delay has reached a specified amount of time, depending on the difficulty of the case. *Garza*, 2009-NMSC-038, ¶ 21. Second, the length of delay remains one of the four *Barker* factors to be weighed and balanced in the final speedy trial inquiry. *Id.* ¶ 23.

**{21}** Whether or not the length of delay is presumptively prejudicial, triggering an inquiry into the *Barker* factors, depends on the complexity of the case. First, the court must classify the case as simple, intermediate, or complex. *See Maddox*, 2008-NMSC-062, ¶ 9. A delay of trial of one year is presumptively prejudicial in simple cases, fifteen months in intermediate cases, and eighteen months in complex cases. *See Garza*, 2009-NMSC-038, ¶ 48.

**{22}** Returning to the case at bar, it is difficult to determine exactly how this case was classified. During the hearing, the district court referred to the case as "simple" multiple times. Yet on the final written order dismissing the case, the court crossed out the word "simple" and wrote "simple to intermediate case." The charges were dismissed after a delay of sixteen months without going to trial, so in either case the delay was presumptively prejudicial, triggering an inquiry into the *Barker* factors.

**{23}** A difficulty arises, however, when determining how heavily to weigh the delay against the State. When weighing "the length of delay, we consider 'the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.'" *State v. Coffin*, 1999-NMSC-038, ¶ 59, 128 N.M. 192, 991 P.2d 477 (quoting *Doggett v. United States*, 505 U.S. 647, 652 (1992)). If this is a simple case, then the delay was four months past the presumptively prejudicial threshold, while if it is an intermediate case the delay was only one month past the threshold. By classifying the case as simple to intermediate, the district court provided no threshold guideline.

**{24}** The district court weighed the length of delay heavily against the State. While we agree that the length of delay does weigh against the State, we cannot say that it does so *heavily.* In *Garza*, this Court stated that "the greater the delay the more heavily it will potentially weigh against the State." 2009-NMSC-038, ¶ 24. Accordingly, this Court concluded that a delay of one month and ten days beyond the presumptively prejudicial period "does not weigh heavily in Defendant's favor." *Id.*; *see also State v. Montoya*, 2011-NMCA-074, ¶ 17, 150 N.M. 415, 259 P.3d 820 (stating that a delay of six months beyond the presumptive period weighed only slightly against the State)*; State v. Brown*, 2003-NMCA-110, ¶ 16, 134 N.M. 356, 76 P.3d 1113 (holding that a delay of three months beyond the presumptive minimum was weighed in the defendant's favor,

6

although not heavily). Therefore, while the delay in this case does weigh against the State, be it a delay of one month or four months, the court erred in weighing that delay heavily against the State.

**Reason for the Delay**

**{25}** "*Barker* identified three types of delay, indicating that 'different weights should be assigned to different reasons' for the delay." *Garza*, 2009-NMSC-038, ¶ 25 (quoting *Barker*, 407 U.S. at 531). On one end of the spectrum, "'a valid reason, such as a missing witness, should serve to justify appropriate delay.'" *Id.* ¶ 27 (quoting *Barker*, 407 U.S. at 531). Negligent or administrative delay is weighed against the State, "'since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant,'" but such a reason is not weighed heavily. *Id.* ¶ 26 (quoting *Barker*, 407 U.S. at 531). Finally, "'*Barker* stressed that official bad faith in causing delay will be weighed heavily against the government,' and excessive bad-faith delay may present an overwhelming case for dismissal." *Id.* ¶ 25 (quoting *Doggett*, 505 U.S. at 656) (emphasis added).

**{26}** Here, the State was responsible for all of the delay. The State requested four trial continuances, at least one continuance of a motion hearing, and two extensions of time limits under Rule 5-604(B) NMRA. Defendant did not ask for any continuances and opposed at least one of the requests.

**{27}** Not only was the State responsible for the entire delay, the district court also found that "the State was dilatory in its pursuit of this matter," as well as with its responsibility to provide timely discovery. In addition, the district court found that the State had misled the court in justifying certain continuances and other extensions of time. Ultimately, the court found a pattern of delay on the part of the State, and we agree with the court that this factor does weigh heavily against the State.

**{28}** In a typical case, the State prepares much of the evidence against the accused even before filing charges. Early preparation may be necessary to get a grand jury indictment or a finding of probable cause at a preliminary hearing. Oftentimes, it is the accused and not the State who needs more time to prepare. In this case, however, it was the State that needed more time to prepare, at least in part because of "900" or "1300" pages of documents that the previous prosecutor attempted to add to the court file and provided to Defendant through discovery.

**{29}** This reason for delay weighs against the State for two reasons. First, it was the State that unnecessarily complicated the case, as the district court ultimately excluded these documents, indicating that they were irrelevant. Second, even if the documents were relevant, it should not have taken the State months to review them, as the district court reasonably could have concluded.

7

**{30}** Therefore, based on the State's conduct in this case, we agree that the reason for the delay should, in the words of the district court, weigh "extremely heavily" against the State. The district court was apparently offended by the State's dilatory conduct in this case, which the record supports.

**Assertion of the Right**

**{31}** Under this factor, "we assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2008-NMSC-038, ¶ 32. "[W]e accord weight to the frequency and force of the defendant's objections to the delay" and "analyze the defendant's actions with regard to the delay." *Id.* (internal quotation marks and citation omitted). Accordingly, we must "closely analyze the circumstances of each case." *Id.* ¶ 33.

**{32}** Here, Defendant first asserted the right by way of a motion filed on December 22, 2008, shortly after the State first filed charges against him. After this assertion of the right, Defendant did not oppose the initial delays requested by the State. It is unclear exactly when this position changed. Defendant claims to have opposed the State's second petition to extend the time limits under Rule 5-604, filed on January 11, 2010, when asked by the State for a position on the matter. However, the petition itself states that "[D]efendant does not take a position on this request." Defendant filed a written objection on February 4, 2010 to the State's final motion to continue the trial. Defendant ultimately filed a motion to dismiss based on a violation of speedy trial rights on March 16, 2010.

**{33}** The district court found that this was a sufficient assertion of his right, and we agree that it was adequate, though certainly not impressive or aggressive. We agree with the district court's characterization of the record that "[w]hile [Defendant] did not aggressively assert [the right], . . . [h]e did not acquiesce to the delay." Accordingly, we weigh this factor against the State as well.

**Prejudice to Defendant**

**{34}** The United States Supreme Court has identified three interests that the right to a speedy trial protects: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. It is within this framework that we analyze prejudice to Defendant. *See Garza*, 2009-NMSC-038, ¶ 35.

**{35}** The district court and the Court of Appeals both concluded that Defendant suffered no prejudice. *Spearman*, No 30,493, slip op. at 7. Both courts focused on the first and third interests protected by the speedy trial guarantee. The Court of Appeals stated "*Garza* makes clear that the kind of prejudice that is important is pretrial incarceration and possible impairment to the defense." *Spearman*, No 30,493, slip op. at

8

4. While those two consequences of delay are undeniably important, they are not exclusive.

**{36}**     In *Garza*, the focus of the discussion about prejudice was on pretrial incarceration and impairment of the defense, but it was not the entirety of the discussion. 2009-NMSC-038, ¶ 35. Specifically, we stated that "we weigh this factor in the defendant's favor . . . where the pretrial incarceration *or* the anxiety suffered is undue." *Id.* (emphasis added). While the discussion of the anxiety and concern caused by the delay was intertwined with pretrial incarceration, we never intended *Garza* to hold that the second prong of the prejudice analysis—anxiety and concern caused by undue delay—is no longer relevant. The right to a speedy trial derives from the federal constitution and, to that extent, we are obliged to defer to the analysis of the United States Supreme Court. *See* U.S. Const. Art. VI.

**{37}**     In addition, an accused does not need to be incarcerated to suffer some of the same hardships and prejudice the right to a speedy trial was meant to prevent. In *Barker*, the United States Supreme Court stated the reasons that pretrial incarceration can be prejudicial, beyond the loss of liberty that necessarily accompanies it. 407 U.S. at 532-33. "It often means loss of a job; it disrupts family life; and it enforces idleness . . . . The time spent in jail is simply dead time." *Id.* The Court also made clear that an accused does not need to be in jail to suffer prejudice, stating "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." *Id.* at 533. *Barker* was neither the first nor the last time that the United States Supreme Court recognized as much. In *United States v. Marion*, 404 U.S. 307, 320 (1971), the Court stated that

> the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, *whether he is free on bail or not*, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

(Emphasis added.); *accord United States v. MacDonald*, 456 U.S. 1, 8 (1982) ("The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.").

**{38}**     In the instant case, Defendant claims to have suffered some of the prejudice that normally flows from incarceration. According to defense counsel, Defendant "lost three different jobs as a result of the pending felony charges." Defendant was "a licensed

draftsman," but due to the nature of the charges "he can no longer be employed in that capacity." Defendant was "unable to find work." Loss of employment, especially being unable to work in one's licensed profession, is a consequence of delay that a reviewing court cannot ignore. Additionally, Defendant "had to file for bankruptcy" and "had to move as a result of losing employment." If these allegations are true, Defendant undeniably suffered some prejudice as a result of the pending charges against him. But, we are unable to determine from the record before us if the prejudice resulted from the delay in this case.

**{39}** In this case, the claimed showing of prejudice came in the form of allegations of counsel, both in the written motion to dismiss and at the hearing. Allegations of counsel are not generally considered evidence. *See Wall v. Pate*, 104 N.M. 1, 3, 715 P.2d 449, 451 (1986). Defendant should have offered some actual evidence in the form of affidavits, testimony, or documentation in support of the allegations of lost employment and bankruptcy. Such evidence could have established that the delay in trial beyond the presumptive period caused the alleged prejudice as opposed to the original indictment. As it stands, however, there is simply no evidence in the record from which the district court, let alone this Court, can make a determination as to whether or not Defendant was prejudiced by the delay in bringing this matter to trial. Accordingly, an evidentiary hearing addressing the entire speedy trial issue is necessary in order to allow Defendant the opportunity to submit such evidence. Without such a causal link, Defendant has not shown that the delay in trial prejudiced him in any way and accordingly there would be no speedy trial violation.

**CONCLUSION**

**{40}** The Court of Appeals' opinion is hereby reversed and remanded to the district court for further proceedings consistent with this opinion.

**{41}  IT IS SO ORDERED**.

_____
      **RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**CHARLES W. DANIELS, Justice (specially concurring)**

**DANIELS, Justice, specially concurring.**

**{42}** I agree with what the Court has written about the current law applicable to speedy trial motions in general and about the need in this particular case for a remand to the district court for an evidentiary hearing on Defendant's speedy trial motion to ensure that the final disposition is based on actual fact, instead of mere conjecture. I write separately to express my concerns about the existing record in this case and, perhaps more importantly in the long run, some thoughts about improved approaches to accommodating an accused's constitutional right to a speedy trial, the strong interest of the public in having criminal cases determined on their merits, and the judiciary's task of managing its caseloads responsibly.

**{43}** There is nothing in the record that tells us when the claimed prejudice to this defendant occurred or whether the prejudice was caused by any inappropriate period of delay. As we have noted in *Jones v. Murdoch*, 2009-NMSC-002, ¶ 18, 145 N.M. 473, 200 P.3d 523, the mere fact of a public criminal prosecution creates immediate and irreparable harm to one's reputation, employment opportunities, and economic circumstances, without regard to the final resolution of the case. There is no evidence to show that this defendant suffered those consequences in this case because of the last continuance or a previous one or any other particular delay in getting the case to trial. In fact, there is no evidence at all in the record. In assessing claimed prejudice from an alleged denial of the right to a speedy trial, timing is a necessary consideration for both the trial court and the reviewing appellate court.

**{44}** I am also troubled by the district court's finding, or perhaps more accurately, supposition, that the prosecution had engaged in deceptive and misleading conduct to delay Defendant's trial. While fraudulent representations to a court by attorneys are obviously matters of serious concern that our courts must respond to and sanction, such serious accusations should not be made lightly. The district court apparently inferred that the prosecutors must have been lying about being ready for trial when they asked for one continuance by representing that a witness was unavailable, because they then worked further on improving their case after receiving the continuance. *See, e.g.*, the remarks of the district court set forth in ¶ 14 of the majority Opinion. Good trial lawyers do not stop working to improve their cases after getting a continuance, no matter what the reason for the continuance. Trial preparation is a never-ending work in progress. I can think of no good reason why our courts should condition a rescheduling request on a party's ceasing improvement of its case, but if we do intend to impose such a novel limitation, we certainly ought to require fair notice that this is going to be the new rule and not allow the prosecution to be blindsided with an outright dismissal as a sanction for working on its case. In any event, this is a matter that can be clarified at the hearing on remand.

**{45}** On a matter of more systemic concern, I am troubled about the ways in which trial courts traditionally have tried to cope with speedy trial issues, often as a result of

11

inadequate guidance from appellate courts. One set of problems is created by our historical attempts to pigeonhole cases into three judicially-created categories of complexity, followed by our application of three different standards of time measurement and prejudice assessment, depending on which artificial complexity pigeonhole we put the cases into. As exemplified by the uncertainty of categorization in this case, there is no reliable way to put cases into those rigid complexity categories. Each case should be examined as a unique entity, because in reality each case is different. Promulgation of artificial categories and formulas creates the danger that in using them we end up thinking words instead of thoughts and lose sight of what we are doing.

**{46}** I am especially concerned about our judicial branch's aborting a criminal prosecution on speedy trial grounds after the dismissing court itself has approved all the requested discretionary continuances and, presumably, the validity of the grounds for the motions. In this case, if the trial court had refused to grant a requested continuance, either because the grounds were insufficient or because postponing the trial would have jeopardized Defendant's speedy trial rights, the prosecutors would have been on fair notice that they had to be in court on the scheduled date with whatever case they had, even with the inconvenience of substitute counsel or missing witnesses. They would have known that they had to put up or suffer the consequences. As it was, they had the rug pulled out from under them and never got to try. They were first told that the court approved rescheduling the trial and then told that their case was unexpectedly given a death sentence and dismissed without a fair trial, not because they did not appear with a case on the court-scheduled trial date, but because the court exercised its judicial discretion to agree to a change of the trial date before telling them that, as a result of that change, they could no longer prosecute the case at all.

**{47}** The speedy trial guarantee is undeniably important and may often be insufficiently protected. Our courts must find fair ways to enforce it and all other important rights. But in doing so, we should always try to resolve cases on their true merits where possible. A better way to accommodate the rights of a defendant and the legitimate interests of the prosecution is for trial courts to consider, and if appropriate even formally rule on, the question whether a requested recalendaring will result in an infringement of a defendant's speedy trial rights *before* a continuance request is ruled on and *before* the prosecution is left unexpectedly with no alternative of any kind. Courts now have the broad discretion to exercise that kind of control over their own dockets, whether or not we ever revise our criminal procedure rules to mandate that judges inquire into speedy trial consequences before granting a continuance motion. In taking speedy trial concerns into account before postponing trials, instead of afterward, judges can better protect the accused's right to a speedy trial without sacrificing society's interest in enforcement of its criminal laws.

                                                          _____

                                                          **CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Spearman*, Docket No. 32,800**

**CONSTITUTIONAL LAW**
Speedy Trial

**CRIMINAL PROCEDURE**
Dismissal of Charges
Prejudice
Speedy Trial

**GOVERNMENT**
Licensing