This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                        **No. A-1-CA-36016**

**TOBY VALLEJOS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth A. Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Patrick J. Martinez & Associates
Patrick J. Martinez
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Chief Judge.**

**{1}** Toby Vallejos (Defendant) was convicted of three counts criminal sexual contact (CSC) of a minor in the second degree (child under 13), contrary to NMSA 1978, Section 30-9-13(B) (2003). On appeal, Defendant contends that the district court erred by: (1) allowing the State to amend the indictment after Defendant filed his notice of alibi defense; (2) quashing the subpoena issued for the victim advocate; (3) not admitting his notice of alibi and the motion to amend the grand jury indictment into evidence; (4) admitting the Victim's safe house interview under Rule 11-801(D)(1)(b) NMRA; and, (5) denying Defendant's motion for speedy trial. We affirm the district court.

**BACKGROUND**

**{2}** Defendant was charged with four counts of CSC of a minor under thirteen years of age. The victim identified in the indictment was Defendant's niece (Victim).

**{3}** When Victim was eleven years old, she first told her cousin and then her mother about Defendant's sexual abuse. Victim's mother testified that Victim told her that Defendant "used to put his penis in [her] butt and hump [her]." Victim was uncertain throughout the case about what age she was when the abuse occurred. A pretrial interview with Victim revealed that the dates in the indictment were not accurate. One year before trial, the district court granted the State's motion to amend the charging dates in the indictment.

2

**{4}**     At trial, Victim testified that she and her brother would go over to Defendant's apartment at the Arbors Apartment where Defendant would babysit them. In the living room of Defendant's apartment, Defendant "would lay [her] down on the side of the couch and pull down [her] pants, and . . . put his private parts in [her] behind area." This occurred three times. Victim testified that these three incidents took place within the same month. Defendant lived in two different apartments at the Arbors Apartment throughout the years, and Victim testified that the incidents took place in the first apartment. Victim also testified that Defendant worked maintenance for the apartment complex. The Arbors Apartments' maintenance supervisor testified that Defendant lived in the apartment complex from June 2006 to June 2009 and worked maintenance from November 2006 to June 2009.

**{5}**     The jury returned a verdict finding Defendant guilty of three counts of CSC of a minor. This appeal followed.

**{6}**     Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of the case, we reserve further discussion of the pertinent facts for our analysis.

**DISCUSSION**

**I.     The District Court Did Not Err by Granting the State's Motion to Amend the Grand Jury Indictment.**

3

{7}     Defendant contends that the district court erred in granting the State's motion to amend the charging dates in the original indictment (Original Indictment). We set out the relevant facts and procedural history of the amendment.

{8}     When Victim first told her mother about the sexual abuse Victim said she was "like, [four]" at the time of the abuse. On September 13, 2011, Victim took part in a safe house interview. In this interview, Victim said she thought she was five or six and in about first or second grade the first time Defendant abused her.

{9}     Defendant was indicted on July 17, 2013. The original charging dates in the Original Indictment for the four charges of CSC of a minor were all on or between October 29, 2003 and October 29, 2005. On January 29, 2014, Defendant filed a notice of alibi defense (Notice of Alibi), stating that, Defendant "did not reside [or] work at the Arbors Apartments between [October 29, 2004,] and [October 29, 2005]. On May 30, 2014, Victim attended a pretrial interview with defense counsel and the State, in which she stated she was seven or eight when Defendant sexually abused her. Further investigation by the State revealed that Defendant worked and lived at the Arbors Apartments starting in the summer of 2006. As a result of Victim's pretrial interview and its additional investigation, the State moved to amend the charging period in the indictment to "on or between the 1st day of May,

4

2006, and the 31st day of December, 2007" for all counts (the Motion to Amend) on November 19, 2014.

{10}     The district court granted the State's motion to amend the grand jury indictment, stating that the State did not seek to add additional charges or additional victims, but rather to more accurately reflect the time period within which Victim claimed the abuse occurred. In its order, the district court specified, "[t]he alleged location where the alleged abuse occurred remains the same; the alleged perpetrator remains the same; the manner in which the alleged abuse occurred remains the same; and the alleged victim remains the same." The order also provided "[i]f . . . Defendant needs additional time to investigate or address the modified charging dates, the appropriate remedy will be for [the district] court to allow additional time to conduct such an investigation." The trial date was then set for twelve months later.

{11}     On appeal, Defendant contends that the amendment to the indictment removed Defendant's ability to prepare an alibi defense at trial and thus substantially prejudiced Defendant. Because of this, Defendant argues that the district court erred by allowing the amendment to the indictment.

{12}     The Rules of Criminal Procedure provide that:

> No variance between those allegations of a complaint, indictment, information, or any supplemental pleading which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be grounds for the acquittal of the defendant

5

unless such variance prejudices substantial rights of the defendant. The court may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence. If the court finds that the defendant has been prejudiced by an amendment, the court may postpone the trial or grant other relief as may be proper under the circumstances.

Rule 5-204(C) NMRA. "We review a district court's interpretation and application of Rule 5-204 . . . de novo." *State v. Stevens*, 2014-NMSC-011, ¶ 49, 323 P.3d 901 (internal quotation marks and citation omitted).

{13}     "The grand jury indictment is to inform the defendants of the nature of the charge so that surprise is avoided." *Sanchez v. State*, 1982-NMSC-012, ¶ 15, 97 N.M. 445, 640 P.2d 1325. "A criminal indictment or information need not contain exacting detail as long as the defendant is given sufficient notice of the charges." *State v. Stevens*, 2014-NMSC-011, ¶ 50, 323 P.3d 901; *State v. Cawley*, 1990-NMSC-088, ¶ 13, 110 N.M. 705, 799 P.2d 574 (recognizing the right of an accused to be apprised of the charge against him and also recognizing that not all charging documents need to establish the time or date of the offense); *State v. Baldonado*, 1998-NMCA-040, ¶¶ 18, 20, 124 N.M. 745, 955 P.2d 214 (recognizing the need to reconcile a defendant's "due process right to reasonable notice of the charges" and the difficulty faced by the state in prosecuting criminal sexual charges committed against children who cannot comprehend and recall dates and other specifics as well as adults but that "[t]he predictable limitations of young witnesses should not be turned into a reason to prevent prosecution of their abusers"); *accord* Rule 5-

6

205(A)(1) NMRA ("It shall be unnecessary for a complaint, indictment or an information to contain the [time of the commission of the offense] unless such allegations are necessary to give the defendant notice of the crime charged"). "A variance is not fatal unless the accused cannot reasonably anticipate from the indictment what the nature of the proof against him will be." *State v. Marquez*, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070. A defendant's mere assertion of prejudice from an amendment to the indictment is insufficient to warrant reversal. *Id.*

{14}   Defendant's assertion that the district court erred in permitting the State to amend the indictment is not supported by our relevant case law. For instance, in *Marquez*, this Court addressed the district court's grant of a mid-trial motion to amend the indictment. The victim testified that she was nine years old at the date of the incident. *Id.* ¶ 18. It was discovered during trial that the charging dates in the indictment were one year off. *Id.* The district court allowed an amendment to the indictment to conform to the evidence during trial but allowed the defendant the opportunity to request a continuance. *Id.* ¶ 19. This Court affirmed the district court, reasoning that the defendant had been aware of the nature of the charges against him, knew the identity of the alleged victim, and was aware of the mistake in the date from the beginning of the trial. *Id.* ¶ 21.

{15}     Our Supreme Court addressed a similar issue in *Stevens*. In *Stevens*, after the defense rested, the state moved to amend the charging dates in the indictment, based on the victim's trial testimony. 2014-NMSC-011, ¶ 9. Over the defendant's objection, the district court allowed the amendment. *Id.* The defendant argued on appeal that she was unfairly prejudiced by the amendment because she had relied on an alibi defense. *Id.* ¶ 53. Our Supreme Court rejected this argument, reasoning in part that the defendant was on notice that the victim could not say precisely when the events occurred because the indictment stated that it occurred "on or about November 12, 2007[,]" and therefore never alleged precise dates. *Id.* ¶ 54 (internal quotation marks omitted). The court also reasoned that the defendant was on notice of the general time frame of the crimes: the crimes "were alleged to have occurred sometime in the fall of 2007 when [the d]efendant was going through a divorce" and living in the Aztec area. *Id.* ¶ 55. The court held that "[the d]efendant was not prejudiced by the amended date description." *Id.* ¶ 57.

{16}     We see no reason to depart from the reasoning in *Marquez* and *Stevens*. Here, Defendant was on notice of the nature of the charges in sufficient detail to prepare his defense. He knew the identity of Victim, where the alleged abuse occurred, and the details of the alleged abuse. He knew that the alleged crimes occurred at the Arbors Apartment when he lived there and while he babysat Victim. Like *Stevens*, the Original Indictment never alleged precise dates because

8

it stated "on or between" the various date ranges. Additionally, Defendant knew Victim could not precisely say when the abuse occurred and learned about the revised time frame at Victim's pretrial interview, over one year before trial.

{17}     Furthermore, as contemplated by Rule 5-204(C), the district court allowed Defendant more time to prepare for trial after it approved the amendment, thereby alleviating any prejudice resulting from the amendment. Accordingly, we hold that the district court did not err in permitting the State to amend the Original Indictment.

**II.     The District Court Properly Quashed the Victim Advocate's Subpoena**

{18}     Defendant argues that the State should have provided any recorded notes of the conversation between the prosecutor, the victim advocate, and Victim that took place prior to Victim's pretrial interview, and that Defendant should have been permitted to take the prosecutor's and the victim advocate's statements concerning the conversation.

{19}     The pretrial interview of Victim occurred on May 30, 2014, with defense counsel, the prosecutor, the victim advocate, and Victim present. In the interview, defense counsel asked Victim to tell them what Defendant did and Victim responded, "[w]hen I was around the age of seven or eight, around there, right?" The victim advocate replied, "Whatever you think it is." When asked why Victim looked to the victim advocate when she said her age at the time of the abuse,

9

Victim said because they talked about it together before the interview. Defense counsel asked what Victim did with the victim advocate and the prosecutor before the interview. Victim said that they were writing down what age she was in each grade to determine what age she would have been in second and third grade.

{20}     Following the interview, Defendant issued and served subpoenas and notices of statements seeking to interview the victim advocate and the prosecutor and to compel the production of "any and all statements, including recording and/or notes, not previously disclosed, but made by [Victim] in connection with this case." Defendant claimed there was a "basically off-the-record conversation that apparently resulted in a wholesale change of testimony by the alleged victim[,]" that "should have happened in the recorded interview" rather than in private. The district court disagreed and quashed Defendant's subpoenas "except as to any documented notes that [the victim advocate] prepared." It is undisputed that there were no notes taken by the prosecutor or the victim advocate documenting the conversation in question.

{21}     Now, Defendant maintains on appeal that it was error for the district court to deny his request to interview the prosecutor and the victim advocate about the relevant conversation with Victim; however, Defendant's argument focuses solely on the subpoena issued for the victim advocate. Thus, we need only address the argument as it pertains to the victim advocate. *Headley v. Morgan Mgmt. Corp.*,

10

2005-NMCA-045, 14, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory and inadequately undeveloped argument).

{22} "A [district court's] denial of a defendant's discovery requests will be reviewed according to an abuse of discretion standard." *State v. Bobbin*, 1985-NMCA-089, ¶ 7, 103 N.M. 375, 707 P.2d 1185. Under New Mexico's criminal procedure rules, parties have an affirmative responsibility to disclose information without request, including witnesses to testify at trial and their statements. *See* Rule 5-501(A)(5) NMRA (explaining that the state must disclose "any statement made by the witness"), Rule 5-502(A)(3) NMRA (explaining that the defense must disclose the same). A "statement" is defined as "any written, stenographic, mechanical, electrical or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral declaration and which is recorded contemporaneously with the making of the oral declaration." Rule 5-501(G). However, there are limits to this disclosure requirement. Our Supreme Court has held that "opinion work product enjoys nearly absolute immunity[,]" akin to civil discovery rules. *State of New Mexico ex rel. Brandenburg v. Blackmer*, 2005-NMSC-008, ¶ 12, 137 N.M. 258, 110 P.3d 66 (internal quotation marks and citation omitted).

{23} In *Blackmer*, the defendant requested disclosure of the victim advocate's notes from the interview between the victim and the victim advocate. *Id.* ¶ 5. The

11

New Mexico Supreme Court was faced with the issue of whether the work product doctrine applied in criminal cases and whether the victim advocates constituted a part of the prosecution team to therefore be protected by the rules of work product. *See id.* ¶ 2. The Court held that the work product doctrine applies in criminal actions. *Id.* ¶ 18. The Court also held that, because the victim advocates perform many tasks similar to those of members of the prosecution team, and because the victim advocates are employed by and work with the district attorney, the victim advocates are part of the prosecution team. *Id.* ¶ 22. Therefore, the relevant rules of attorney-client confidentiality and State disclosure apply to the victim advocates. *Id.*

{24} In short, *Blackmer* extended the attorney-client confidentiality protections afforded to prosecutors to the victim advocates. *Id.* Defendant does not challenge this. Instead, Defendant argues that the unrecorded and undocumented statements made from Victim were "material evidence that should have been recorded or documented." We are not persuaded. Defendant has cited to no relevant authority for this proposition. And, as indicated in *Blackmer*, undocumented statements, such as those at issue here, do not fall within Rule 5-501's disclosure requirements. *See* Rule 5-501(G) (defining "statement" as a writing or other recording); *Blackmer*, 2005-NMSC-008, ¶ 24 (noting that "an undocumented statement is not within the definition" of Rule 5-501(G)). Accordingly, we hold that the district

12

court did not abuse its discretion in quashing Defendant's subpoenas issued to the prosecutor and the victim advocate.

### III. The District Court Did Not Abuse Its Discretion by Denying the Admission of Defendant's Notice of Alibi and the State's Motion to Amend into Evidence

{25}    At trial, Defendant sought to introduce the Notice of Alibi and the Motion to Amend in an effort to demonstrate that the State amended the charging dates to overcome Defendant's alibi defense and to challenge Victim's credibility. Specifically, Defendant moved to admit the following portion of the State's Motion to Amend as an opposing party's statement, pursuant to Rule 11-801(D)(2)(a), (b):

> The original indictment charged [Defendant] with crimes occurring between October 29, 2003[,] when [Victim] was four years old and October 29, 2005[,] when she was six years old. [Victim] said the abuse occurred in the Arbors Apartments. On January 29, 2014, [Defendant's] attorneys filed a notice of alibi stating that [Defendant] did not live at the Arbors Apartments during the charging period but moved there in 2006.

> In order to further investigate the alibi defense, the prosecutor spoke to the witness [Victim] regarding when and where the abuse happened. [Victim] was not exactly sure how old she was when the abuse took place but she recalls that she was no older than 8 years old and was maybe in the second or third grade. [Victim] stated her cousin . . ., [Defendant's] granddaughter, was in either kindergarten or first grade at Bel Air elementary school when the abuse took place. During her pretrial interview, [Victim] reiterated the statements made to the prosecutor and also stated she was sure the abuse took place in [Defendant's] first apartment at the Arbors. Thereafter, the State changed the indictment to charge [Defendant] with crimes occurring between May 1, 2006 and December 31, 2007.

13

Defendant first argued that the Motion to Amend should be admitted as a statement by a party opponent under Rule 11-801(D)(2)(a), (b). Defendant also asserted that the part of the statement discussing the Notice of Alibi and change in the charging period was admissible by judicial notice under Rule 11-201 NMRA. The district court rejected the argument that it was a statement by a party opponent. The district court took judicial notice of the dates of the Original Indictment and the amended indictment, as well as the change in the charging dates, but did not take judicial notice of the Notice of Alibi, believing it to be confusing to the jury. Before the jury left for deliberations, the district court stated:

> Before we send you in, folks, the [c]ourt recognizes that there was an indictment filed in this case, July 18th of 2013, with date ranges for October 29th of 2003, to October 29th of 2005. That indictment was amended on February 19th of 2015 to reflect a different date range. The date ranges were then May 1st, 2006, to December 31st of 2007. You may or may not accept this notice of fact as conclusive in terms of your deliberation.

**{26}** Now on appeal, Defendant maintains that the district court erred by not admitting the Motion to Amend as a statement of a party opponent and the Notice of Alibi as a judicially noticed fact.[1] We review a district court's admission of

---

[1]Defendant also argues the district court erred in failing to instruct the jury about the judicially noticed facts. As a preliminary matter, we need not reach this jury instruction argument. Besides his contention, Defendant has not developed his argument, cited to any legal authority, or directed us to any evidence in the record to support his contention, and we therefore decline to address the matter further.

evidence for an abuse of discretion. *State v. Jaramillo*, 2012-NMCA-029, ¶ 17, 272 P.3d 682. A court abuses its discretion when it makes an evidentiary ruling that "is clearly against the logic and effect of the facts and circumstances of the case" and "clearly untenable or not justified by reason." *State v. Samora*, 2016-NMSC-031, ¶ 37, 387 P.3d 230 (internal quotation marks and citation omitted).

**A. The District Court Did Not Err in Determining the State's Motion to Amend is Not a Statement of a Party Opponent**

{27} Rule 11-801(D)(2)(a) excludes admissions by a party opponent from the hearsay rule provided that "[t]he statement is offered against an opposing party and . . . was made by the party in an individual or representative capacity[.]" Rule 11-801(D)(2)(b) likewise exempts statements offered against an opposing party in which "the party [has] manifested that it adopted or believed [it] to be true.

{28} Defendant argues that since the State is a party opponent, the language in the State's Motion to Amend regarding the original indictment dates, the alibi defense, and amended charging dates should have been admitted. The State responds that while the State is a party opponent, Victim is not, and the statements were made by Victim. Because Victim was not a party opponent, nor was she acting as an agent of the State, the State argues, the out-of-court statements in the Motion to Amend should not be admissible pursuant to Rule 11-801(D)(2)(a), (b).

---

*See Headley*, 2005-NMCA-045, ¶ 15 (declining to entertain a cursory and inadequately undeveloped argument).

15

**{29}** We agree with the State. The State's Motion to Amend, containing Victim's statements, does not fall within the hearsay exemption in Rule 11-801(D)(2) because Victim is not a party opponent. *See State v. Leyba*, 2012-NMSC-037, ¶ 22, 289 P.3d 1215 (holding that the victim's diary did not fall into the Rule 11-801(D) party opponent exemption to hearsay because the victim was not a party opponent). Accordingly, we conclude that the district court did not abuse its discretion by denying Defendant's request to admit the State's Motion to Amend as a statement of a party opponent.

**B.      The District Court Did Not Err by Refusing to Take Judicial Notice of Defendant's Notice of Alibi**

**{30}** "A court may take judicial notice of adjudicative facts that are not subject to reasonable dispute. Such facts must be matters of common and general knowledge which are well established and authoritatively settled." *State v. Erikson K.*, 2002-NMCA-058, ¶ 24, 132 N.M. 258, 46 P.3d 1258 (alteration, omissions, internal quotation marks, and citation omitted)); *accord* Rule 11-201(A). Adjudicative facts are facts "not subject to reasonable dispute[,]" including facts that are capable of being "accurately and readily determined from sources whose accuracy cannot reasonably be questioned[.]" Rule 11-201(B)(2).

**{31}** Defendant argued at trial that the Notice of Alibi was intended to inform the jury that Defendant gave notice to the State that Defendant did not reside at the Arbors Apartments during the dates contained in the Original Indictment.

16

Defendant thus sought judicial notice not just of the fact that he filed a Notice of Alibi but also of the dates of his alibi. As the State argued at trial, Defendant had the burden of proving his alibi, and he could have provided witnesses and testimony about where he lived prior to the charging time at the Arbors Apartments. Defendant cites to no rule or other legal authority to support his proposition that judicial notice can be used as a vehicle to substitute pretrial pleadings for the production of an alibi defense. The theory of judicial notice is a way for a court to accept facts "not subject to reasonable dispute" that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned[.]" Rule11-201(B)(2). Defendant's Notice of Alibi does not meet the requirements. *Cf. City of Aztec v. Gurule*, 2010-NMSC-006, ¶ 9, 147 N.M. 693, 228 P.3d 477 (taking judicial notice of a municipal ordinance); *State v. Yanez*, 1976-NMCA-073, ¶ 9, 89 N.M. 397, 553 P.2d 252 (taking judicial notice of the fact that morphine is an opium derivative). We therefore affirm the district court's denial of admission of the Notice of Alibi as a judicially noticed fact.

**IV.     The District Court Did Not Abuse Its Discretion by Admitting Victim's Safe House Interview as a Prior Consistent Statement**

{32}     One of Defendant's theories at trial was that Victim changed her story about her age at the time of the abuse to defeat Defendant's alibi. Based on Defendant's suggestion that improper influence caused Victim to fabricate her age during the incidents as a result of the alibi notice, the State sought to admit the safe house

17

interview as a prior consistent statement at trial. Over Defendant's objection, the district court admitted the tape as a prior consistent statement.

{33} We review evidentiary decisions by the district court for abuse of discretion. *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. Under Rule 11-801(D)(1)(b), a prior consistent statement is not considered hearsay and is admissible to "rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." The prior consistent statement must have been made before the alleged motive to fabricate occurred and must be consistent with the statement made in court. *State v. Casaus*, 1996-NMCA-031, ¶ 18, 121 N.M. 481, 913 P.2d 669. To determine whether the testimony at trial is consistent with the prior statement, "the primary inquiry is whether the [prior statement] and trial testimony were substantially similar as to all material facts presented." *State v. Salazar*, 1997-NMSC-044, ¶ 67, 123 N.M. 778, 945 P.2d 996. "Our Supreme Court has decided that prior statements which vary slightly from testimony at trial are admissible as non-hearsay under Rule 11-801(D)(1)(b)." *State v. Nichols*, 2006-NMCA-017, 20, 139 N.M. 72, 128 P.3d 500.

{34} On appeal, Defendant argues only that the interview contained inconsistent statements concerning the age of Victim at the time of the incidents, and, as such, the interview was not consistent with her testimony and should have been

18

excluded. Victim's safe house interview was substantially similar to her trial testimony. In the safe house interview, Victim said she was in first or second grade; at trial, Victim said she was in second or third grade. In the interview, Victim said the abuse occurred at Defendant's first apartment at Arbors Apartments in the living room on the couch. At trial, Victim testified to the same location of the abuse. She also remained consistent with who was there, who her abuser was, and the details of the abuse. While there are some inconsistencies between the interview and trial testimony with respect to Victim's age, Victim maintained that she was not certain of her age at the time of the abuse, but nevertheless was fairly consistent about her grade. Under the circumstances, we think the prior interview is similar enough to Victim's trial testimony "to pass abuse of discretion muster and thus to be admissible under Rule 11-801(D)(1)(b)." *Nichols*, 2006-NMCA-017, ¶ 25; *see id.* (holding that district court did not abuse its discretion in admitting prior statement where there were inconsistencies between the statements and trial testimony regarding the type of abuse because court viewed the statements broadly given the defendant's charge of fabrication).

**V.      Defendant's Constitutional Right to a Speedy Trial Was Not Violated**

{35}      Defendant asserts that the district court erroneously denied Defendant's motion to dismiss for violation of his right to a speedy trial. The Sixth Amendment of the United States Constitution, as applied to the states by the Fourteenth

Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted). The New Mexico Constitution offers similar protection and provides that "[i]n all criminal prosecutions, the accused shall have the right to . . . a speedy public trial." N.M. Const. art. II, § 14. While we recognize the "societal interest in bringing an accused to trial[,]" we are tasked with looking closely at each claimed speedy trial violation. *Garza*, 2009-NMSC-038, ¶¶ 12-13. "The heart of the right to a speedy trial is preventing prejudice to the accused." *Id.* ¶ 12. Thus, there must be more than simply a delay in bringing the case to trial. *State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505.

{36} The speedy trial analysis is fluid and "specifically rejects inflexible, bright-line approaches." *Garza*, 2009-NMSC-038, ¶ 13. Instead, when reviewing a speedy trial claim, we weigh and balance four factors from *Barker v. Wingo*, 407 U.S. 514 (1972): "(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant that, on balance, determines whether a defendant's right to a speedy trial has been violated." *Garza*, 2009-NMSC-038, ¶ 13 (internal quotation marks and citation omitted). This Court defers to the district court's factual findings, but independently reviews the weighing and balancing of the *Barker* factors de novo to determine whether a

20

defendant's constitutional right to a speedy trial was violated. *State v. Spearman*, 2012-NMSC-023, ¶ 19, 283 P.3d 272.

**A.     Length of Delay**

{37}     "The length of the delay is a two-fold inquiry. Initially, we determine whether the delay is presumptively prejudicial. If it is presumptively prejudicial, we balance the length of the delay against the remaining three factors to assess whether the constitution has been violated." *State v. Laney*, 2003-NMCA-144, ¶ 11, 134 N.M. 648, 81 P.3d 591; *see Ochoa*, 2017-NMSC-031, ¶ 12 (describing the length of delay as both the threshold question in the speedy trial analysis and one factor to be weighed with the other three *Barker* factors). Whether the length of delay is presumptively prejudicial depends on the complexity of the case. *See Spearman*, 2012-NMSC-023, ¶ 21. A one-year delay is presumptively prejudicial in simple cases, fifteen months in an intermediate case, and eighteen months in a complex case. *Id.*

{38}     The district court determined, and we agree, that this case is one of intermediate complexity based on the number and type of charges in this case, the number of witnesses including several civilian and child witnesses, and the challenges posed by Defendant's alibi defense. Defendant argues that the case is "not one of complexity," but fails to develop this argument, provide supporting legal authority, or provide any evidence in the record to support his assertion. We

21

therefore reject this argument and defer to the district court's determination that this case is one of intermediate complexity. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists."); *State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what a part[y's] arguments might be").

{39}     Defendant's right to a speedy trial attached when he was indicted on July 17, 2013. *See State v. Moreno*, 2010-NMCA-044, ¶ 10, 148 N.M. 253, 233 P.3d 782 (noting that speedy trial right attaches at indictment). The trial docket call was not until February 29, 2016, or approximately thirty-one months later. This exceeds the fifteen-month threshold articulated in *Garza* by an additional sixteen months. Thus, this presumptively prejudicial delay triggers further inquiry into the *Barker* factors. *See Garza*, 2009-NMSC-038, ¶ 21.

{40}     Not only is the length of delay the triggering mechanism for further inquiry into the *Barker* factors, it is also an independent factor to consider in determining whether a speedy trial violation has occurred. *See Ochoa*, 2017-NMSC-031, ¶ 12 (describing the "length of delay, [as] both the threshold question in the speedy trial analysis and [one] factor to be weighed with the other three *Barker* factors"); *Garza*, 2009-NMSC-038, ¶ 23 (directing courts to consider the length of delay as

22

one of the four factors in the *Barker* analysis). In weighing the length of the delay, "we consider the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Spearman*, 2012-NMSC-023, ¶ 23 (internal quotation marks and citation omitted). "[T]he greater the delay the more heavily it will potentially weigh against the [s]tate." *Garza*, 2009-NMSC-038, ¶ 24. The sixteen-month delay beyond the triggering date weighs heavily against the State. *See State v. Talamante*, 2003-NMCA-135, ¶¶ 11, 21, 134 N.M. 539, 80 P.3d 476 (finding delay of approximately thirty months weighed heavily against the state in an intermediate to complex case).

**B.     Reasons for Delay**

{41}    New Mexico courts have recognized three types of delay that are weighed differently—deliberate, negligent or administrative, and neutral. *See Ochoa*, 2017-NMSC-031, ¶ 18. Deliberate or intentional delay will weigh heavily against the State, negligent or administrative delay will weigh against the State, but not heavily, and non-negligent, valid delay will not count against either party. *See Garza*, 2009-NMSC-038, ¶¶ 25-27.

{42}    The district court identified the following periods of delay: (1) from the date of indictment, July 17, 2013, until the first pre-trial conference set for November 5, 2013; (2) from the date of the first pre-trial conference, November 5, 2013, to August 12, 2014, the date of a second pre-trial conference; (3) from the date of the

23

second pre-trial conference, August 12, 2014, to the February 3, 2015 docket call; (4) from the February 3, 2015, docket call to the scheduling conference on March 3, 2015; and (5) from the March 3, 2015, scheduling conference to trial on March 14, 2016. Defendant does not address these time frames in his briefing and instead baldly asserts "that more time should have been weighed against the State." Given the lack of any developed argument here, we see no reason to depart from the district court's well-reasoned determinations as to each time period, which we discuss briefly below.

{43} The first three periods of delay, or approximately eighteen months, are weighed neutrally, as they were either consented to by Defendant or were a period of normal progression toward trial. *See State v. Taylor*, 2015-NMCA-012, ¶ 11, 343 P.3d 199 (weighing neutrally a period of delay when the case "was progressing in a normal fashion"). However, the fourth period of delay, from the cancelled February 3, 2015, docket call to the scheduling conference on March 3, 2015, was due to the implementation of a local rule and judge reassignment. This period of approximately one month weighed slightly against the State. *See Garza*, 2009-NMSC-038, ¶ 26 (holding that delay caused by negligent or administrative delay weighs slightly against the State).

{44} The last period of delay is the approximately twelve-month period from the March 3, 2015, scheduling conference to the March 14, 2016, jury trial date. The

24

delay in setting the matter for trial was due to the congested court docket, but such a delay was not extraordinary or protracted. *See State v. Valencia*, 2010-NMCA-005, ¶ 17, 147 N.M. 432, 224 P.3d 659 ("A more neutral reason such as negligence or administrative delay, including overcrowded dockets, is weighed 'less heavily,' and the weight to be assigned depends on the length of the delay, such as whether it is extraordinary or protracted."). In that twelve-month time frame, both parties continued to work the case towards trial. *Taylor*, 2015-NMCA-012, ¶ 11. Therefore, this twelve-month period of delay weighed against the State.

{45}     Based on the foregoing, we hold that for the total thirty-one-month delay, approximately eighteen months is weighed neutrally, as the Defendant either consented to the delay or the case was progressing normally towards trial. *See Moreno*, 2010-NMCA-044, ¶ 13 (concluding that "the case proceeded with customary promptness and delay cannot be held against either party"). We also hold that the thirteen months of the delay due to the rescheduling of the docket call and the trial date weighed against the State as administrative delay. *See Garza*, 2009-NMSC-038, ¶¶ 26, 29 (stating that the administrative delays are weighed against the state and the degree of weight is closely related to the length of the delay).

25

## C.     Assertion of the Right

**{46}**     Under the third *Barker* factor, "we assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. "We accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *Spearman*, 2012-NMSC-023, ¶ 31 (alterations, internal quotation marks, and citation omitted).

**{47}**     Defendant made a pro forma assertion of his right to a speedy trial with the entry of appearance of his counsel on August 13, 2013. Defendant then consented to the continuance of several pre-trial conferences and did not make another speedy trial demand until September 1, 2015, over twenty-four months after he was indicted. This demand was followed by his certificate of readiness and his motion to dismiss on speedy trial grounds, both filed in November 2015.

**{48}**     Although Defendant sufficiently asserted his right to a speedy trial, his assertions were not forceful or vigorous such that this factor would weigh heavily in his favor. *See State v. Tortolito*, 1997-NMCA-128, ¶ 17, 124 N.M. 368, 950 P.2d 811 (holding that the third *Barker* factor did not weigh significantly in the defendant's favor when "[he] did not specifically invoke a ruling on his constitutional right to a speedy trial until he moved to dismiss the case almost one year after he was arrested"). Defendant's first assertion was standard pro forma

26

assertions of his right. *See State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061 ("[P]ro forma motions are generally afforded relatively little weight in this analysis."). His next two demands were over twenty-four months later and were made after he had consented to several continuances. Accordingly, this factor weighs only slightly in Defendant's favor.

**D.    Prejudice**

{49}    Lastly, "[t]he heart of the right to a speedy trial is preventing prejudice to the accused." *Garza*, 2009-NMSC-038, ¶ 12. Prejudice to the accused is analyzed in light of three interests: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *See id.* ¶ 35. "[G]enerally a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Id.* ¶ 39. We consider whether Defendant "offered some actual evidence in the form of affidavits, testimony, or documentation in support of the allegations" of prejudice in the form of pretrial incarceration, undue anxiety and concern, or impairment to the defense, which was caused by the delay in bringing the case to trial. *See Spearman*, 2012-NMSC-023, ¶ 39.

{50}    Defendant has not met his burden. At the hearing on his speedy trial motion, Defendant argued that he suffered undue anxiety and concern from his conditions of release. But Defendant failed to show that he suffered any undue anxiety or

27

concern beyond what anyone accused of a crime would suffer. *See State v. Parrish*, 2011-NMCA-033, ¶ 33, 149 N.M. 506, 252 P.3d 730 (holding that the defendant's alleged prejudice of undue anxiety due to travel restrictions, restrictions on owning a firearm, and concern for his job were "similar to the disruptions that any accused person might suffer and does not demonstrate particularized prejudice"). On appeal, Defendant advances only a vague argument that he suffered prejudice from the "deterioration of testimony" and the loss of his alibi defense due to the length of delay between the indictment, the date of the pretrial interview, and the amendment. Defendant's generalized statements, without more, do not support a particularized showing of prejudice. *See Ochoa*, 2017-NMSC-031, ¶ 53 ("[M]ere allegations are insufficient to prove prejudice.").

**E.     Balancing Test**

{51}     *Barker* instructs us to consider all four factors together along with other relevant circumstances. *Barker*, 407 U.S. at 533. Although the length of delay weighs heavily against the State, the reasons for the delay on balance do not weigh strongly in Defendant's favor. And the assertion of the right weighs only slightly in Defendant's favor. Finally, Defendant has not established particularized prejudice. Considering these factors in totality, we conclude that the *Barker* factors support the district court's denial of Defendant's motion to dismiss on speedy trial grounds.

**CONCLUSION**

28

{52}    For the aforementioned reasons, Defendant's convictions are affirmed.

{53}    **IT IS SO ORDERED.**


_____
                                    **M. MONICA ZAMORA, Chief Judge**

**WE CONCUR:**


_____
**JENNIFER L. ATTREP, Judge**


_____
**KRISTINA BOGARDUS, Judge**